In the Matter of the Application for Disciplinary Action against Harry L. MALLOY, a Member of the Bar of the State of North Dakota.

GRIEVANCE COMMISSION, Applicant,

v.

Harry L. MALLOY, Respondent.

Civ. No. 9171.

Supreme Court of North Dakota.

Nov. 30, 1976.

LeRoy P. Anseth, Williston, for Grievance Commission.

Mart R. Vogel, Fargo, for respondent.

VOGEL, Justice.

This is a disciplinary proceeding against an attorney admitted to practice in the courts of this State. It arises out of events described in some detail in *Stude v. Madzo*, 217 N.W.2d 5 (N.D.1974), wherein Stude, lessee of Madzo ranch land with option to buy, exercised the option with funds provided by O'Connell and Rustan after secretly agreeing to lease the property from them as owners. The formal agreement between Stude and the intended owners became Exhibit "A." Stude subsequently entered into a contract for deed with Madzo which contained a no-assignment clause, and in a deposition before trial denied that he had any written agreement with O'Connell and Rustan to operate the ranch for them as lessee. Harry L. Malloy, who drew the papers binding the secret agreement, was present when the deposition was taken.

The matter was first investigated by a grievance committee of the State Bar Association of North Dakota, which filed a report of its findings and its recommendations, after which the Grievance Commission of this court held a hearing and made its report to this court. We authorized the filing of a complaint and appointed the Honorable Ralph B. Maxwell, district judge, as referee. The referee heard evidence and issued a memorandum opinion and recommendation. The matter is now before us for determination. This somewhat cumbersome procedure is in conformity with Chapter 27–14, North Dakota Century Code, and the Rules of Disciplinary Procedure of this court. We are now actively considering modification of those rules.

The grievance committee of the Bar Association recommended that disciplinary proceedings be instituted against Mr. Malloy, alleging (1) a violation of Rule 11 of the North Dakota Rules of Civil Procedure, authorizing disciplinary action against an attorney who willfully signs a pleading without knowledge, information, or belief that there is good ground to support it, and (2) alleging a violation of the disciplinary rules "with regard to Mr. Malloy's conduct during and after the deposition of Mr. Stude taken on July 17, 1972." To understand these references, see *Stude v. Madzo, supra,* 217 N.W.2d 5, at 9 and 10.

The Grievance Commission of this court determined not to allege a violation of Rule 11. In the hearing before the Commission, it was asserted on behalf of Mr. Malloy that he believed that Exhibit "A" had been superseded by subsequent oral agreements of the parties to it, that under such agreements Rustan was the only party interested in the property, and that Mr. Malloy could, therefore, without violating Rule 11, deny the allegations of the answer and counterclaim to the effect that Stude had assigned or leased the property to O'Connell. Or the Grievance Commission may have concluded that willfulness did not exist or could not be proved. At any rate, we accept the elimination of the charge of violation of Rule 11, N.D.R.Civ.P.

This leaves the charge as to conduct during and after the deposition of July 17, 1972. The Grievance Commission, in the formal complaint, charged only a violation of the American Bar Association Code of Professional Responsibility, Disciplinary Rule 7–102(B)(1), which provided, at the time of the acts complained of:

"(B) A lawyer who receives information clearly establishing that:

"(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal."

At the hearing before the referee, the referee, upon learning that no charge was contemplated under other disciplinary rules, such as DR 7–102(A)(6), relating to creation or preservation of false evidence, or DR 2–110(1), relating to withdrawal of employment, required counsel for the Commission to reiterate the basis for the complaint. Counsel stated again that it was DR 7–102(B)(1).

Upon this sole charge, the referee found that there was a conflict between DR 7–102(B)(1) on the one hand, and, on the other hand, Section 27–13–01, subsection 4, N.D. C.C., and DR 4–101(B)(1), both of which require an attorney to maintain inviolate the secrets of his client.

Section 27–13–01, N.D.C.C., provides, in pertinent part, that every attorney and counselor at law shall:

"4. Maintain inviolate the confidence, and at any peril to himself, preserve the secret, of his client; . . . "

The applicable portion of DR 4–101 reads:

"(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

"(1) Reveal a confidence or secret of his client."

After an examination of the disagreement among commentators and judges as to how to resolve a conflict between a lawyer's duty to maintain confidentiality and his duty to the courts,* the referee concluded that "Disciplinary penalties should not be imposed when Respondent was involuntarily caught in a confusing situation where regardless of the course he chose he must run afoul of one of two conflicting professional obligations."

As to Mr. Malloy's conduct at, and immediately after, the taking of the deposition, we are persuaded to agree. However, as to his conduct four months later in failure to turn over all the documents he had promised to produce, on July 17, 1972, we do not agree.

I

It is clear that Mr. Malloy had no advance warning that his client would commit perjury. When the perjury was committed in his presence, he was faced with the dilemma caused by conflicting duties to the court and to his client. On the one hand, he had a duty to the client to protect his confidences, as required by Section 27–13–01, subsection 4, and DR 4–101(B)(1), and, on the other hand, he had a duty to the court as specified by DR 7–102(B)(1).

The gravity of the dilemma is emphasized by the fact that DR 7–102(B)(1) has been amended since the events giving rise to this proceeding occurred. It now reads:

"(B) A lawyer who receives information clearly establishing that:

"(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal, *except when the information is protected as a privileged communication.*" [New language emphasized.]

In a case somewhat similar to the present one, the Oregon Supreme Court concluded that an attorney should urge his client to make a disclosure, and if the client refuses, the attorney should have nothing further to do with him but that he need not disclose the fraud to the court. The court then held

---

\* The referee's citations include:

   *Rush v. Cavenaugh*, 2 Pa. [Barr] 187 (1846).
   40 A.L.R.3d 169, Annotation of American decisions.

Formal *Opinion* No. 287 of ABA Committee on Professional Ethics, issued 1953.

that no reprimand would be made, since withdrawal was not specifically required, but that in the future an attorney whose client refuses to disclose perjury must withdraw from the case. *In re A,* Or., 554 P.2d 479 (1976). We agree.

## II

At the time the deposition was taken, on July 17, 1972, specific demands were made for production of documents relating to the transaction described in *Stude v. Madzo, supra.* The demands related to documents showing the security instruments involved, if any, and the sources of financing of the purported purchaser. Mr. Malloy promised to produce "whatever I can, what's available." 217 N.W.2d 5, at 9. On November 17, 1972, four months later, he sent to opposing counsel copies of the original note and mortgage, but not Exhibit "A," the document which represented the real agreement between the parties. 217 N.W.2d 5, at 9.

Shortly after producing the documents on November 17, 1972, Mr. Malloy withdrew from the case and another law firm represented Stude thereafter.

■ Before the Grievance Commission, Mr. Malloy justified his failure to take any action during the four-month period after the perjury occurred, and his failure to supply Exhibit "A" to opposing counsel, by asserting that Exhibit "A" had been superseded by oral side agreements and written assignments from Stude to Rustan and therefore was ineffectual at the time of the deposition. This, however, does not excuse failure to comply with an unqualified promise, made on the record in a deposition, to supply documents the production of which could have been compelled by discovery proceedings. We cannot agree with the suggestion made in oral argument in this court that disciplinary proceedings cannot be based on failure to comply with commitments made of record by attorneys, but can be based only on failure to comply with orders of a court.

It was also contended before the Grievance Commission by counsel, relying upon

recollection, that Exhibit "A" had been signed by only three of the four intended signers at or about the date it bears, and Rustan did not sign it until shortly before the time of trial. We do not deem this to be any excuse for failure to produce Exhibit "A." The document still fit the description of the documents promised to be delivered, and it could very well have been binding on all parties who signed it (and Rustan as well, by ratification). We also note that Rustan testified in a deposition that Exhibit "A" bore his signature and that he supposed he had signed it on the date it bore.

■ It is also asserted that no harm was done by the nondisclosure since Exhibit "A" was disclosed to all parties concerned before or at the trial, which took place shortly after the events described above. But the greater harm is done to the judicial process, not to the parties.

Just as "All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth" [*In re Michael,* 326 U.S. 224, 227, 66 S.Ct. 78, 80, 90 L.Ed. 30, 33 (1945)], so failure to perform commitments made in open court damages the judicial process regardless of whether the parties are damaged. And, here, the parties could very well have been damaged if the trial court had accepted the stipulation of Stude and Madzo to dismiss Stude's action, based on Madzo's belief in the truth of Stude's statements which were, in fact, false. See *Stude v. Madzo, supra,* 217 N.W.2d 5, at 10.

■ Mr. Malloy also asserted before the Grievance Commission that to disclose Exhibit "A" to opposing counsel would have shown his client to be a perjurer. Indeed it would. But that does not excuse the failure to produce documents where the promise to produce was a matter of record at the taking of a deposition. When a promise is made to produce "all" documents, and only some are produced, there is an implied representation that those produced are all of the documents demanded. If Mr. Malloy believed that he had the right to refuse to produce Exhibit "A," he had the duty to

disclose that he was producing less than all the documents, and to give his reason. Otherwise, he was misleading opposing parties and the court. As was said in *In re McCullough,* 97 Utah 533, 557, 95 P.2d 13, 24 (1939):

> "The claim, now urged, of privilege because of the attorney-client relationship, to be available must be asserted at the time the question calling for such information is asked; the witness cannot pretend to withhold nothing and then, when confronted with facts, claim that they were withheld because of a confidential relationship. Although such conduct might not support a charge of contempt, it is yet such conduct as, in an attorney, shows disrespect for the court and lack of respect for the attorney's oath, and is therefore unprofessional conduct."

The foregoing represents our view as to the duties of lawyers under circumstances we have described. Lawyers in the future will be held to these standards.

In the case of Mr. Malloy, however, since these duties had not been specifically stated in this jurisdiction previously, and particularly in view of the narrow nature of the one specific charge against him, we find that disciplinary action is not justified in this case.

The recommendation of the referee that the complaint be dismissed is affirmed. No disciplinary action will be taken.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.