STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

James R. LLOYD, Respondent.

OBAD No. 830.

SCBD No. 3455.

Supreme Court of Oklahoma.

Feb. 13, 1990.

Dan Murdock, Gen. Counsel, John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

John D. Boydston, Tulsa, for respondent.

OPALA, Vice Chief Justice.

In this proceeding against a lawyer for imposition of professional discipline the issues are: [1] Did the evidence establish that respondent attempted to deceive a claims adjuster by offering to settle a slip-and-fall case without first informing him that summary judgment had already been given to the insured party? [2] Did respondent have a duty to explain at the time of his voluntary production of some medical records why he did not fully comply with the opponent's pretrial discovery request? and [3] If so, what is the proper measure of discipline to be visited, bearing in mind that in the context of pretrial discovery conduct the then-effective Code [1] did not provide a defined standard of duty to speak? We answer the first question in the negative and the second in the affirmative, and then responding to the third, we conclude that a public reprimand is the appropriate sanction.

James R. Lloyd [Lloyd], a licensed lawyer, was charged by complainant, Oklahoma Bar Association [Bar], with two acts of professional misconduct claimed to warrant disciplinary sanction. The Bar and Lloyd then entered into a written "Proposed Stipulations of Fact and Conclusions of Law with Agreed Recommendation for Discipline," which were adopted by a panel of the Professional Responsibility Tribunal [PRT]. This court declined to approve the then recommended discipline—i.e., public reprimand and assessment of costs—and remanded the complaint for a full evidentiary hearing before the PRT panel whence it came. After a post-remand hearing, the panel dismissed the complaint as unsupported by clear and convincing evidence.

### Episode 1

The misconduct episodes under review occurred during Lloyd's representation of a client in a slip-and-fall case. Opposing counsel sought on two occasions to obtain

---

1. See *infra* note 8 for the pertinent provisions of the then-effective Code of Professional Responsibility [the Code] which have now been superseded by the Model Rules, *infra* note 17.

copies of the client's medical records relative to the injury and those for a 10–year period next preceding that harmful episode. Lloyd was served on May 21, 1986 with a motion to produce the records and then on June 3 with notice of a deposition hearing to be held June 10. He had until June 21 to respond or object to the initial request[2] and *until July 3*[3] to the later request for production at the deposition proceeding. Lloyd agreed to let his opponent have the requested materials on June 9. Before they were picked up, he discovered that two pages contained potentially damaging statements.[4] Lloyd removed and withheld those pages from the delivered materials. At the deposition hearing the following day he told opposing counsel that the records were "incomplete" and then handed him a medical release authorization. On *June 30, three days before the statutory deposition deadline* for production of the material sought to be discovered, opposing counsel confronted Lloyd with knowledge of the excised pages' damaging content.

### Episode 2

On several occasions after the litigation had been instituted, Lloyd contacted the claims adjuster in an ongoing effort to settle the lawsuit. The afternoon following summary judgment's rendition for the adverse party, Lloyd again talked to the adjuster and attempted to secure a compromise. He made no mention of the judgment in favor of the insured defendant until the claims adjuster himself brought up the subject. He told the adjuster that the court's ruling—one in the nature of a default—could be easily vacated.

Opposing counsel sought sanctions against Lloyd for misconduct in failing to disclose that he had removed two pages from the produced records and in attempting to mislead the claims adjuster by withholding vital information about the unfavorable outcome of the summary judgment process. Lloyd's defense to this charge was that portions of the two excised pages were both "irrelevant" and inadmissible "hearsay."[5] The trial court declined to impose sanctions on Lloyd, concluding that the discovery code afforded no basis for their imposition.

## I

## LLOYD'S RESPONSE

During the bar disciplinary proceedings Lloyd offered additional reasons for his actions. He had withheld the pages in order to "buy" more time during which he could determine whether his client was in fact inebriated when the harm occurred. He was concerned about subjecting his client, as well as himself, to sanctions for filing an unwarranted lawsuit. Conceding he should have withheld all the records until after he made this determination, Lloyd stated his decision voluntarily to produce some of the medical records was a "knee-jerk" reaction to the short notice given for the deposition. Because he still had three days left of the statutory 30–day period to exercise other options on behalf of his client, he had not sought a protective order when opposing counsel confronted him on June 30 with the missing content of the medical records. As for the charge involving the claims adjuster, Lloyd ex-

---

**2.** See 12 O.S.Supp.1982 § 3211(B) [renumbered as § 3234(B) by Okl.Sess.L.1989, Ch. 129, § 14, eff. Nov. 1, 1989], which provides that "... the party, upon whom the request [to produce] is served, shall serve a written response within thirty (30) days after the service of the request...."

**3.** See 12 O.S.Supp.1981 § 3207(c)(5) [renumbered as § 3230(C)(5) by Okl.Sess.L.1989, Ch. 129, § 14, eff. Nov. 1, 1989], which provides that § 3234 procedures, *supra* note 2, shall apply to a request for the production of documents by a party seeking to take a deposition.

**4.** The following handwritten notations were made on the two excised pages:
"History received from Daughter. Pt. [patient] is a 47 y/o w o→ [year old white male] alcoholic who states that he fell on curb 4 days ago. (Apparently was intoxicated)" Page 1. "According to Daughter, pt. has had nothing to Drink in the last week & is somewhat shakey. Needs refill on Librium." Page 2.

**5.** *Although declining to sanction Lloyd, the court, in its November 21, 1986 order, made a finding that the excision of the two pages from the medical records was "unethical" and had been done "with the intent to deceive counsel."*

plains he had no legal duty to inform his adversary of any developments in the case, much less to advise him about the summary judgment's appealability.

Lloyd perceived the discovery code as not requiring disclosure of any part of the medical records until the end of the statutory deposition deadline *on July 3, 1986.* He was of the view that, so long as the materials were being voluntarily produced during the 30–day period provided by legislative law, he could *supply some* of the records and *withhold others.* He believed the discovery code did not at that stage impose on him any further duty vis-a-vis the opposing counsel; neither did he believe he owed any responsibility to the court because no motion to compel was then pending before it. He emphasized his first duty was to protect his client from court sanctions by investigating the facts of the case. If his own inquiry were to reveal the suit was meritless, he would then be duty-bound to terminate the litigation.[6]

## II

### VIOLATIONS OF CANONS OF PROFESSIONAL RESPONSIBILITY

■ In bar disciplinary proceedings this court does not function merely as a reviewing forum but rather sits as a licensing agency exercising directly its *exclusive original* jurisdiction. The ultimate responsibility for imposition of discipline rests on this court alone. In the process of deciding whether discipline is warranted and, if so, what sanction, if any, is to be imposed for professional misconduct, this court will conduct a *de novo* examination of the entire record.[7]

The complaint alleges Lloyd's actions violated the mandatory provisions of DR 1–102(A)(4) and (5) and DR 7–102(A)(1), (2) and (3), Code of Professional Responsibility,[8] in that he had engaged in conduct intended to deceive or misrepresent matters subject to discovery as well as one which was prejudicial to the administration of judicial process; he took action on behalf of his client which would serve merely to harass or maliciously injure another; he advanced a defense that is unwarranted under existing law; and he knowingly failed to disclose that which he was required by law to reveal.

## III

### ALLEGED DECEPTION–OF–ADJUSTER CHARGE

■ The deception-of-adjuster part of the charge is clearly dismissible. There is no fiduciary duty on the part of the advocate for a claimant to tell the insurance adjuster what the latter should know about the lawsuit. The record is barren of clear and convincing evidence to make this episode a fit foundation for a disciplinary infraction.[9]

---

6. Lloyd's expert witnesses—three lawyers each of whom had been in practice approximately 30 years—shared his views about a lawyer's duty during the discovery stage of litigation.

7. *Oklahoma Bar Ass'n v. Stubblefield,* Okl., 766 P.2d 979, 982 [1988]; *State ex rel. Oklahoma Bar Ass'n v. Cantrell,* Okl., 734 P.2d 1292, 1293 [1987]; *State ex rel., Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 265–266 [1982].

8. 5 O.S.1981, Ch. 1, App. 3.
The terms of DR 1–102(A)(4) and (5) are:
"A lawyer shall not: * * *
(4) *Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.*
(5) Engage in conduct that is prejudicial to the administration of justice. * * *" [Emphasis added.]
The terms of DR 7–102(A)(1), (2) and (3) are:

"In his representation of a client, a lawyer shall not:
(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.
(3) *Conceal or knowingly fail to disclose that which he is required by law to reveal."* [Emphasis added.]

9. It is the Bar's burden to establish support for the charges by clear and convincing proof. Rule 6.12(c), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A. *State ex*

## IV

### ALLEGED DECEPTION IN KNOWINGLY WITHHOLDING ADMITTEDLY DISCOVERABLE INFORMATION

The second episode—urged as a deception in knowingly withholding admittedly discoverable information that was subject to inspection—presents a gravely different situation.

■ Discovery is vital to the truth-seeking mechanism of our adjudicative process.[10] Any conduct that misleads one's adversary in the latter's search for the truth anterior to trial impedes and impairs the integrity of forensic fact-finding process. All pretrial discovery, whether carried out by voluntary or involuntary means, must be treated alike. Its contamination produces a like negative effect on the law's pursuit of truth. While a lawyer has no duty to give succor to, or actively facilitate, the truth-seeking quest of an opponent, he may not undermine it by actions tending to mislead. *In the conduct of our adversary litigation process no stage affords a license for an advocate's use of misleading tactics to impede or thwart the foe's legitimate pursuits.*

■ Misleading litigation conduct cannot be justified on the ground that there is no articulated code norm that prohibits it. Discovery production, both voluntary and court-mandated, is governed by the same ethical norms that are found in the law's general duty of proper conduct vis-a-vis one's opponent.

■ The instant proceeding for imposition of discipline must be viewed as *governed by the ethical norms* found in the then-effective Code[11] rather than elsewhere in the body of our law. Were it a quest for sanctions, we would look for guidance to the discovery code.[12] *No less than full compliance or explained noncompliance is consistent with a lawyer's Code-imposed duty to produce discoverable information.* In the context of pretrial litigation procedures, excision of material information from records to be produced for an adversary's inspection is a serious act of professional misconduct. It is a patent effrontery to the law's established goal for an uncontaminated fact-finding process.[13] The purpose of pretrial discovery is to search for the truth to the end that legal resolution of the dispute may be rested upon full revelations rather than on facts that are partially obscured.

■ Lloyd was tampering with the discovery process when he removed two critical pages from the material he offered to produce. His misconduct consists of failing to disclose, *before* his opponent's own discovery, that he had removed and withheld the damaging parts. His conduct clearly was designed to mislead, if not indeed to deceive as well. Lloyd is not exonerated by the fact the *full length of the statutory 30-day period* for producing the requested medical records had not yet come to an end when his opponent discovered part of the material had been excised. He should have either produced *all* the discoverable documents or made a proper objection to avoid their delivery. He was *duty-bound not only to reveal* he was

*rel. Oklahoma Bar Ass'n v. Braswell,* Okl., 663 P.2d 1228, 1232 n. 7 [1983].

**10.** In *Monier v. Chamberlain,* 35 Ill.2d 351, 221 N.E.2d 410, 417 [1966], the court aptly noted that the overriding purpose of discovery is nothing less than to promote "the ascertainment of the truth and ultimate disposition of the lawsuit in accordance therewith...." The Court in *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed. 1077 [1958], observed that the discovery rules were designed to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." See also Brazil, The Adversary Character of Civil Discovery: A Critique and Proposals

for Change, 31 Vanderbilt L.Rev. 1295, 1298 [1978].

**11.** See *supra* note 8.

**12.** 12 O.S.1981 §§ 3201 et seq. [renumbered as 12 O.S.Supp.1989 §§ 3224 et seq. by Okl.Sess.L. 1989, Ch. 129, § 14, eff. Nov. 1, 1989]. See also *Higgins v. Lufi,* 353 N.W.2d 150, 155 [Minn.App. 1984], a case involving imposition of sanctions for failure to obey a court order to take a deposition, where the court stated that lawyers have an *ethical duty to cooperate in the discovery process* and to obey court orders.

**13.** *Matter of Malloy, infra* note 14 at 46–47.

producing *less than what was requested but also to give his reasons for falling short of doing so.*[14] The lawyer's Code obligation is not satisfied by delivery of an incomplete set of records together with a medical authorization release. While Lloyd doubtless perceived his conduct as beneficial to his client, his protective motive, even if done in good faith, does not reduce the gravity of the offense nor condone his impeding and misleading actions.[15]

**14.** See *Matter of Malloy*, 248 N.W.2d 43, 46–47 [N.D.1976]. *Malloy* stands as authority for the Code-based rule, *supra* note 8, that a lawyer shall not knowingly withhold discoverable materials which he is by law required to reveal. In *Malloy* demand had been made at a deposition hearing for the production of certain documents. The respondent-lawyer, although he had promised to produce whatever was available, knowingly withheld an important exhibit from the documents supplied to his opponent. In response to respondent's assertion that no harm was done by the nondisclosure since the exhibit was later produced before trial, the court's decision opines that "the *greater harm is done to the judicial process, not to the parties.*" The court notes that if the respondent believed he had a right to refuse to produce the exhibit, "he had a *duty to disclose that he was producing less than all the documents, and to give his reason. Otherwise, he was misleading opposing parties and the court.*" [Emphasis added.] *Malloy* holds that a lawyer who engages in misleading conduct of the character charged against Lloyd is subject to disciplinary cognizance of the bar.

**15.** See *State ex rel. Oklahoma Bar Ass'n v. Hensley*, Okl., 661 P.2d 527, 530 [1983]. In *Malloy*, *supra* note 14 at 47, the respondent-lawyer also sought to shield his conduct by explaining that disclosure of the excised material would have shown his client to be a perjurer. Declining to accept this explanation, the court quoted from *In re McCullough*, 97 Utah 533, 95 P.2d 13, 24 [1939]:

"'The claim, *now urged,* of privilege because of the attorney-client relationship, to be available *must be asserted at the time the question calling for such information is asked;* the witness cannot pretend to withhold nothing and then, when confronted with facts, claim that they were withheld because of a confidential relationship. Although such conduct might not support a charge of contempt, it is yet such conduct as, in an attorney, shows disrespect for the court and lack of respect for the attorney's oath, and is therefore unprofessional conduct.'" [Emphasis added.]

**16.** Constructive fraud—a breach of either legal or equitable duty—does not necessarily involve an intent to deceive or actual dishonesty of purpose. *Faulkenberry v. Kansas City Southern*

## V

## DISCIPLINE

■ We cannot impute constructive fraud to Lloyd's conduct inasmuch as no articulated standard of duty to speak[16] was in existence until our adoption of the Model Rules.[17] Nonetheless a lawyer who impedes his opponent's search for the truth by misleading him in that effort is subject to disciplinary cognizance.

*Ry. Co.,* Okl., 602 P.2d 203, 206 [1979]. *Where one has a duty to speak, but remains silent, he may be guilty of constructive fraud. Phillips v. Ball,* Okl., 358 P.2d 193, 197 [1960]. Even an innocent misrepresentation may constitute constructive fraud where there is an underlying duty to correctly inform a person of the facts. *Steele v. Steele,* 295 F.Supp. 1266, 1269 [D.C.W. Va.1969]. Constructive fraud is statutorily defined in 15 O.S.1981 § 59.

**17.** The Code of Professional Responsibility [Code] was superseded by the Oklahoma Rules of Professional Conduct [Model Rules], 5 O.S. Supp.1988, Ch. 1, App. 3–A, effective July 1, 1988. The comparable Model Rules are much clearer and more specific. See Rule 3.4 (Fairness to Opposing Party and Counsel) which provides:

"A lawyer *shall not:*
(a) *unlawfully obstruct another party's access to evidence* or *unlawfully* alter, destroy or *conceal a document or other material having potential ·evidentiary value.* A lawyer shall not counsel or assist another person to do any such act;

\*    \*    \*    \*    \*    \*

(d) in *pretrial procedure ... fail to make a reasonably diligent effort to comply with a legally proper discovery request* by an opposing party; \* \* \*" [Emphasis added.]

The Comment to Rule 3.4 states that "[f]air competition in the adversary system is secured by prohibitions against ... concealment of evidence, ... obstructive tactics in discovery procedure, and the like." It further notes that "[d]ocuments and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party ... to obtain evidence through discovery or subpoena *is* an important procedural right."

Rule 3.4(d) has no counterpart in the Code. See Maute, A Practitioner's Guide to the Oklahoma Rules of Professional Conduct [1988], p. 276; ABA Model Rules of Professional Conduct, Proposed Final Draft [May 1988], p. 136. The rule restates the general duties established in Rules 3.1 (not to employ frivolous stratagems in litigation) and 3.2 (not to engage in dilatory tactics) in the context of pretrial discovery. *The import of Rule 3.4(d) stresses that these duties run not*

Measuring the incident by the provisions of ethical standards then in force, we find an absence of clear and convincing proof [18] that he was motivated by a bad-faith resolve to conceal the existence of the excised material beyond the date required for its production. The record nonetheless leaves us with a clear impression—plainly apparent from the testimony—that Lloyd offered less than full disclosure for the incompleteness of the material delivered. Regrettably, Lloyd waited too long to provide an explanation for his actions; his misleading conduct was *then* already known; he must *now* be held accountable for his dereliction at the *locus in quo.*

Because the then-effective Code [19] was not as specific in the condemnation of the charged misconduct as the present Model Rules [20] and its meaning stood unsettled, we opt for the imposition of a lenient sanction in the form of public reprimand.[21] Today's decision should not be mistaken for our unwillingness to enforce strictly the far-more-clear and greatly more stringent discovery conduct norms now imposable by the Model Rules nor for our reluctance to guard against infusion of dishonesty into a voluntary pretrial process of discovery. If

the same scenario were to arise under the Model Rules, a more severe discipline would doubtless be warranted for the corruption of the truth-seeking search in the forensic process of adjudication.

Given the novelty of the question presented, our purpose today is to establish a principle that will guide lawyers' future conduct and serve as an ample warning against recurrence of like dereliction.[22]

Lloyd shall stand publicly reprimanded and bear all costs of this proceeding—$1,599.46—which is to be remitted within thirty days after this opinion becomes final.

RESPONDENT IS PUBLICLY REPRIMANDED AND DIRECTED TO REMIT COSTS.

HARGRAVE, V.C.J., and LAVENDER, DOOLIN, KAUGER and SUMMERS, JJ., concur.

HODGES, SIMMS and ALMA WILSON, JJ., dissent.

HODGES, Justice, dissenting.

I would adopt the PRT's recommendation that the complaint be dismissed.

only to the tribunal but to opposing parties and to counsel as well.

18. Rule 6.12(c), *supra* note 9; *State ex rel. Oklahoma Bar Ass'n v. Braswell, supra* note 9.

19. See Brazil, *supra* note 10 at 1296, where the author observes the Code's language might lend support to the adversarial approach of resisting the disclosure of information and to misleading one's opponent. He points out that Ethical Consideration 7–3 to Cannon 7 "directs litigating attorneys to resolve all 'doubt as to the bounds of the law' in favor of their clients." Thus, the author observes, any ambiguity about the scope of an interrogatory or a document production demand must be resolved in favor of narrowness and against disclosure. This, he reasons, "causes a lawyer to feel considerable pressure to adopt an aggressively broad definition of the term 'doubt' whenever doing so might benefit the client—by revealing less information or misleading an opponent ..." According to the author, "the high commandment of loyalty to the client and the intense adversary context in which that loyalty must be proven can make resisting disclosure of damaging evidence and using discovery devices to gain tactical advantages seem thoroughly consistent with the highest standards of the profession."

20. *Supra* note 17. See Maute, Sporting Theory of Justice: Taming Adversary Zeal With A Logical Sanctions Doctrine, 20 Conn.L.Rev. 7, 19 [1987]. The author notes that the underlying philosophy of the Model Rules is to define coherent standards of conduct both for purposes of discipline and of guidance. The changes in the standards found in Model Rule 3.4, which is the ethical counterpart of litigation rules, *clearly require fair competition regarding access to evidence, discovery conduct and obedience to the rules of a tribunal.* Subsection (d) of Model Rule 3.4, *supra* note 17, is the most significant change from the Code in that it attempts to strike at abusive discovery conduct.

21. In *Malloy, supra* note 14, the court, though declining to impose disciplinary sanction, indicates that in the future lawyers would be expected to follow the standards pronounced in that opinion. We are not inclined to be so lenient. Tampering with the truth-finding devices of adjudicative process by misleading an opponent's legitimate pursuit is a serious act of professional misconduct. At the very least, it warrants a public reprimand.

22. *State ex rel. Okl. Bar Ass'n v. McNaughton,* Okl., 719 P.2d 1279, 1281–1282 [1986].

SIMMS, Justice, dissenting.

I would suspend the respondent from the practice of law for three months.

ALMA WILSON, Justice, dissenting.

I would adopt the PRT's recommendation that the complaint be dismissed.