1999 OK 92

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Kenneth D. UPTON, Jr., Respondent.**

**State of Oklahoma ex rel. Oklahoma Bar Association, Complainant,**

v.

**Stefan Wenzel, Respondent.**

**SCBD Nos. 4359, 4360.**

Supreme Court of Oklahoma.

Nov. 23, 1999.

Allen J. Welch, Oklahoma Bar Association, Oklahoma City, Oklahoma, Attorney for Complainant.

Jack S. Dawson, James A. Scimeca, Miller Dollarhide, Oklahoma City, Oklahoma, Attorney for Respondent Stefan Wenzel.

Gary A. Rife, Oklahoma City, Oklahoma, Attorney for Respondent Kenneth D. Upton.

HODGES, J.

## I. OVERVIEW

¶ 1 Complainant, Oklahoma Bar Association (OBA), alleged one count of misconduct warranting discipline against respondent attorney, Stefan Wenzel, and one count against respondent attorney, Kenneth D. Upton, Jr. The complaints alleged that the respondents had violated rules 3.4(a), (c) and (d), 5.2, and 8.4(c) and (d) of the Oklahoma Rules of Professional Conduct, Okla. Stat. tit. 5, ch. 1, app. 3–A (1991). The Professional Responsibility Tribunal (PRT) granted the OBA's motion to make the matters companion cases. Neither of the respondents has been disciplined or previously been the subject of a grievance.

¶ 2 The PRT found these matters to be a "troubling attempt to apply the disciplinary rules to a rather unremarkable" discovery dispute. Based on its determination that the respondents had not violated the Rules of Professional Conduct, the PRT recommended that the complaints be dismissed.

## II. FACTS

¶ 3 On June 22, 1995, USAA assigned a claim to Central Oklahoma Claims (COC). The claim arose from an automobile accident involving an insured of USAA. At the time, Anita Matson was employed by COC as a claims adjuster, and the matter was assigned to her. After attempts to settle the matter

failed, suit was filed on August 15, 1995. Alexander B. McNaughton represented the plaintiff. Respondent Kenneth D. Upton represented one of the defendants.

¶ 4 USAA directed Ms. Matson to assist Mr. Upton in the defense of the suit. She met with Mr. Upton who gave her additional investigatory tasks to be done in preparation of the law suit. Ms. Matson wrote Mr. Upton two letters outlining the work that she had done at his request and attaching documents which she had obtained from third-parties. The letters were dated December 6, 1995, and January 3, 1996.

¶ 5 In January, 1996, Ms. Matson received a subpoena duces tecum requesting that she appear and bring all documents created prior to August 15, 1995, which related to the accident claim. Mr. Upton met with Ms. Matson and reviewed the file. The documents were produced without objection. In September 1996, Mr. Upton asked Steven Wenzel, an associate in the firm, to assist with the day-to-day responsibilities of the case, and Mr. Upton continued his supervision.

¶ 6 Then in May of 1997, a second subpoena duces tecum was served on COC requiring Ms. Matson to appear and bring with her "the complete claims file" in addition to other documents. Even though Ms. Matson had left COC, the subpoena was promptly delivered to her. In preparation for the second deposition, Mr. Wenzel reviewed the file. In reviewing the file, Mr. Wenzel discovered that the file contained work done not only at the direction of USAA before the suit was filed but also work done after the suit was filed at the request of the respondents. At the direction of Mr. Upton, Mr. Wenzel removed one report written by Ms. Matson to Mr. Upton and the attached documents which she had obtained from third parties. It is uncertain whether Mr. Wenzel removed a second report also. Mr. Upton directed Mr. Wenzel to assert protection as to these documents under a claim of work product.

¶ 7 Before the deposition, Mr. Wenzel informed Ms. Matson that he had removed the documents. He did not request or even suggest that she conceal this fact. Mr. Wenzel indicated that these documents were protect-

ed from discovery. Ms. Matson understood from her conversation with Mr. Wenzel that a protective order had been filed concerning these documents although that was not the case. Mr. Wenzel then telephoned Ms. Matson and asked that she separate the file into documents created before August 15, 1995, and those created thereafter. Ms. Matson complied with this request.

¶ 8 Ms. Matson retained an attorney who appeared with her at the deposition. In the first few minutes of the deposition, Mr. Wenzel asserted protection under the work product doctrine as follows:

I'm going to assert the work product for any conclusions or opinions or reports [Ms. Matson has] written from the date of the lawsuit forward and I'm going to have her limit her answers to whatever conclusions and—or findings she made prior to the date of the lawsuit and I think that encompasses all the materials that you recent— or you received pursuant to subpoena.

And just to make things go smoother, if you'll allow me that objection and that assertion of the privilege—or the work product doctrine, I won't interrupt every time; however, I will ask that the witness only respond to the question to the extent she can up through the period the lawsuit was filed.

Mr. McNaughton responded: "I don't think that's a problem."

¶ 9 When Mr. McNaughton asked Ms. Matson if she had given him the complete file, he was informed that the documents created after August 15, 1995 had been separated. Mr. Wenzel again asserted work product protection as to the segregated part of the file. The segregated part was sealed, and Mr. McNaughton stated that he intended to present them to the court for a ruling on the claim of work product protection. Then after a short conference with her attorney, Ms. Matson informed Mr. McNaughton that Mr. Wenzel had removed some other documents.

¶ 10 When Mr. McNaughton asked Mr. Wenzel about the removed documents, Mr. Wenzel stated: "I don't have them here. I have the documents and we'll produce the

document log and we'll identify them and then we'll let the Court determine whether or not they're work product." To which, Mr. McNaughton replied: "I don't think it works that way."

¶ 11 Mr. McNaughton then filed a motion to compel the production of the segregated documents and for sanctions. The trial court found that Ms. Matson's reports were protected under the work product doctrine but the attachments were not protected and denied the motion for sanctions. The trial court allowed fifteen days before requiring the production of the unprotected documents.

¶ 12 After judgment was entered in the underlying case, Mr. McNaughton filed a grievance with the OBA. The OBA asserts that the respondents violated the Rules of Professional Conduct by removing documents from Ms. Matson's file and concealing their removal. The PRT held an evidentiary hearing. In addition to the evidence presented about the facts underlying the complaint, several well-respected attorneys and judges testified as to the respondents' commendable character. The attorney witnesses also testified that their construction of the rules of evidence did not require the respondents to file a protective order or present a privilege log describing the removed documents before the time of the deposition. The PRT found that the respondents had not violated the Rules of Professional Conduct as alleged and recommended that the complaints be dismissed.

### III. STANDARD OF REVIEW

¶ 13 This Court's review of the record is de novo. *State ex rel. Oklahoma Bar Ass'n v. Wilkins,* 1995 OK 59, ¶ 12, 898 P.2d 147, 150. Even though this Court is not bound by the PRT's recommendations, they are noted. Before this Court will impose discipline, the OBA must prove the charges by clear and convincing evidence. *Id.*

### IV. DISCUSSION

¶ 14 The thrust of the complaint is that respondents obstructed the opposing party's access to the two letters by removing the documents from the file and failing to timely disclose the fact. In reviewing the respondents actions, it is necessary to determine their obligations under the discovery code.

¶ 15 This Court has not previously determined whether an objection based on a claim of work product must be filed with the court before the time for compliance of a subpoena. Subsection 2004.1(C)(2)(b) of title 12 of the Oklahoma Statutes provides that a subpoenaed party contesting the discovery of evidence may object in writing to the inspection and copying within fourteen days of service or before the time for compliance if such time is less than fourteen days. However, the time allowance set out in subsection 2004.1(C)(2)(b) are subject to subsection 2004.1(D)(2). Subsection 2004.1(D)(2) states:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

¶ 16 By its express language, subsection 2004.1(D)(2) contemplates that documents may be withheld from production at the time of the deposition based on a claim of privilege or subject to protection under a claim of work product. This subsection does not require a written objection be served before the deposition. Because subsection 2004.1(C)(2)(b) is subject to subsection 2004.1(D)(2), the timetable set out in subsection 2004.1(C)(2)(b) does not limit the time for making objections based on a privilege or a work product claim made pursuant to subsection 2004.1(D)(2). Thus, a party making a 2004.1(D)(2) objection may ask the court for a protective order or may make a written or oral objection to the demanding party on or before the time for compliance with a subpoena.

¶ 17 Because the relevant subsections of section 2004.1 use the same language as the comparable paragraphs of rule 45 of the Federal Rules of Civil Procedure (FRCP), cases and comments construing rule 45 are informative. The federal counter-provisions to

subsection 2004.1(C)(2)(b) and 2004.1(D)(2) are FRCP rule 45(c)(2)(B) and rule 45(d)(2) respectively. Several federal courts have addressed the uncertainty created by the language of these two FRCP paragraphs. *Tuite v. Henry*, 98 F.3d 1411, 1416–17 (D.C.Cir.1996); *Keywell Corp. v. Piper & Marbury, L.L.P.*, 1997 WL 627636, *7–8 (W.D.N.Y.1997); *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 162 F.R.D. 539, 540–41 (N.D.Ill.1995); *Ventre v. Datronic Rental Corp.*, 1995 WL 42345, *3–4 (N.D.Ill.1995); *Winchester Capital Mgt. Co. v. Manufacturers Hanover*, 144 F.R.D. 170, 175–76 (D.Mass.1992); see 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2464 (1995).

¶ 18 In *Winchester Capital Management Co., Inc. v. Manufacturers Hanover Trust Co.*, 144 F.R.D. 170, 175 (D.Mass.1992), the court held that rule 45(d)(2) permits assertion of a "work-product protection at the time for compliance with the subpoena regardless of whether an objection or motion to quash has been filed prior to the time set for compliance," but the rule might be otherwise for other objections. In *Keywell Corp. v. Piper & Marbury, L.L.P.*, 1997 WL 627636, *7–8 (W.D.N.Y.1997); *Ventre v. Datronic Rental Corp.*, 1995 WL 42345, *3–4 (N.D.Ill. 1995), and *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 162 F.R.D. 539, 540–41 (N.D.Ill.1995), the servee was allowed to claim a privilege as to certain documents despite a failure to file a written objection within fourteen days of being served.

¶ 19 These authorities construing the rule 45 of the FRCP are persuasive. We conclude that the language of subsection 2004.1(D)(2) allows an objection based on a claim of privilege or the work product doctrine to be made at the time for compliance with the subpoena. The objection must be made expressly and described sufficiently that the demanding party is able to contest the claim of privilege. Okla. Stat. tit. 12, § 2004.1(D)(2) (1991). The demanding party may seek an order to compel production of the documents withheld under a claim of privilege or under the work product doctrine and ask the court for a determination whether the documents are protected. Addressing

the present matter, as the PRT noted: "[T]he process for review of claims of privilege worked precisely as it was intended," and section 2004.1 of title 12 was not violated.

¶ 20 We next turn to the question of whether the respondents were deceitful in withholding the documents. It is significant that at the beginning of the deposition, Mr. Wenzel objected, based on a claim of work product, to conclusions, reports, and opinions that Ms. Matson had written after the law suit was filed. Mr. McNaughton responded: "I don't think that's a problem." Thereafter, Ms. Matson testified truthfully about the segregated documents. Neither of the respondents ever suggested to Ms. Matson that she do otherwise. Information about the withheld documents was made available in the initial stages of the deposition. The withheld documents were not destroyed, altered or concealed. The OBA has not presented clear and convincing evidence that either of the respondents attempted to deceive Mr. McNaughton. In fact, Mr. Wenzel's initial assertion of work product protection should have alerted Mr. McNaughton that some of the documents would not be available for his inspection. Mr. McNaughton's response certainly could be construed as agreeing to certain documents being withheld.

¶ 21 The Bar claims that this case should be governed by *State ex rel. Okla. Bar Ass'n v. Lloyd*, 1990 OK 14, 787 P.2d 855. In *Lloyd*, an attorney was publicly reprimanded for withholding documents, failing to disclose that he had withheld the documents, and failing to properly object to their disclosure. There is no similar conduct here. At the outset of the deposition, Mr. Wenzel objected to production of documents created after the law suit was filed in compliance, the fact that they were withheld was disclosed, and a proper objection was made to their disclosure.

### V. CONCLUSION

¶ 22 The OBA did not present clear and convincing evidence to show that the respondents violated the Oklahoma Rules of Professional Conduct. We agree with the PRT's finding that the respondents' conduct was not a violation of rules 3.4(a), (c) and (d), 5.2, and

8.4(c) and (d) of the Oklahoma Rules of Professional Conduct, Okla. Stat. tit. 5, ch. 1, app. 3–A (1991). The OBA's application for costs is denied.

RESPONDENTS EXONERATED; APPLICATION FOR ASSESSMENT OF COSTS DENIED.

¶ 23 ALL JUSTICES CONCUR.