**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Robert J. STUBBLEFIELD, Respondent.**

**OBAD No. 739.**
**SCBD No. 3342.**

Supreme Court of Oklahoma.

Dec. 6, 1988.

As Corrected Dec. 14, 1988.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

---

William W. Hood & Associates by William F. Raynolds, II and John D. Boydston, Tulsa, for respondent.

HODGES, Justice.

This bar disciplinary proceeding was initiated against respondent Robert J. Stubblefield after receiving a written complaint filed by his client. Complainant Oklahoma Bar Association lodged a formal complaint against Stubblefield on June 4, 1986. On July 31, 1987, the Bar Association filed a second amended complaint against Stubblefield alleging two counts of professional misconduct necessitating discipline. The matter came on for hearing on September 17 and 18, 1987. The Trial Panel of the Professional Responsibility Tribunal made the following findings of fact:

"1. On or about March 24, 1983, Sherrie Smith, formerly Sult, met with Respondent in his offices and discussed with him her desire to place her unborn child for adoption in a private proceeding. Respondent agreed to assist by attempting to find adoptive parents. Respondent explained to Smith that if adoptive parents could be located, he would be representing the adoptive parents, not Smith, in any adoption proceedings.

"2. At that time, although the age of Smith is unknown, it is clear that she was an adult and well over eighteen (18) years of age. The father of the unborn child was unknown.

"3. On a subsequent visit to Respondent's office, Smith retained Respondent to represent her in other matters dealing with a pending criminal proceeding against her and an attempt to obtain for her custody of her daughter from a previous marriage. On this occasion, Smith was accompanied to Respondent's office by Smith's mother. Smith disclosed to Respondent that she was unemployed and habitually depended on drugs and alcohol. Smith's mother advised Respondent that Smith was not responsible nor dependable and requested Respondent to 'baby sit' with Smith to make sure that Smith did all that was needed regarding her pregnancy and to assist Respondent

[sic] in attempting to resolve her legal problems.

"4. Respondent's wife, Brenda, was an employee of Respondent and undertook the task of transporting Smith to medical appointments, counseling sessions, and necessary court appearances.

"5. Respondent made it clear to Smith and her mother that the adoption matter was totally separate from Smith's other legal problems and that he would be representing the adoptive parents, not Smith, in the adoption proceeding and no fees would be charged to Smith in the adoption matter.

"6. In April, 1983, Smith advised Respondent that another attorney had been retained in December, 1982, to obtain for Smith a divorce from her prior husband. Smith had discovered that the divorce proceeding was never filed. Smith delivered her prior attorney's file to Respondent and requested that Respondent complete the divorce. The prior attorney's file received by Respondent contained a Petition prepared by the former attorney in December, 1982. This Petition recited that Smith was not pregnant. Respondent also received a Waiver of Service of Summons and general Entry of Appearance which included the signature of Smith's husband. This document was signed by the husband in December, 1982.

"7. In April or May, 1983, Respondent caused the divorce Petition to be retyped in his office and filed in the District Court of Tulsa County, case number JFD–83–1883. In Paragraph II of the Petition, Respondent alleged that 'No children have been born of the marriage and the Plaintiff is not pregnant.' Further, Respondent caused to be filed in the divorce proceeding the Waiver of Service of Summons and general Entry of Appearance which included the signature of Smith's husband. The face of said Waiver and Entry of Appearance indicated it had been signed and sworn before a notary public on the third day of May, 1983. In fact, a Waiver of Service of Summons and general Entry of Appearance had been signed by the hus-

band on December 19, 1982. Respondent caused the date of December 19, 1982, on the Waiver of Service of Summons and general Entry of Appearance signed by the husband to be changed to the third day of May, 1983, and directed his secretary to notarize the signature on that date.

"8. Respondent and his wife, Brenda, attempted to find prospective adoptive parents for Smith's unborn child. Adoptive parents interested in adopting a baby boy were located. In September, 1983, Respondent and his wife discussed adopting the child. Smith delivered a baby girl on October 11, 1983. Throughout her pregnancy, Smith was adamant in her desire to give the baby up for adoption.

"9. On October 12, 1983, by prior arrangement [with] the Honorable David Winslow, hearing was held before Judge Winslow regarding Smith's consent to adoption. Smith was accompanied to the Judge's chambers by Brenda Stubblefield and her mother. Respondent was not present. After the Court fully explained to Smith her legal rights with regard to the proceedings, Smith voluntarily executed the written consent to give the child up for adoption. The consent was before the Court and accepted by the Court. Judge Winslow was aware that Respondent and his wife, Brenda, were to be the adoptive parents. There was never any indication by Smith that she wanted anything but to consent to the adoption.

"10. After Smith executed the Consent To Adoption before Judge Winslow and after the baby girl was found physically sound by examining physicians, Respondent and his wife, Brenda, instituted and ultimately did adopt the child.

"11. Respondent continued to represent Smith on other legal matters until February, 1985."

With respect to Count I of the second amended complaint, the Trial Panel concluded as a matter of law that the conduct of respondent pertaining to the adoption proceedings did not violate DR 1–102(A)(2) and (4); DR 2–111(B); DR 4–101(B)(3); DR 5–101(A) nor DR 7–101(A)(3) of the Code of Professional Responsibility, 5 O.S.1981 Ch. 1, App. 3, and recommended no discipline as to that Count.

With respect to Count II, the second amended complaint alleged violations of DR 1–102(A)(4) and (5); DR 7–102(A)(3), (4), (5), (6), (7) and (8); and DR 7–102(B)(1) of the Code of Professional Responsibility. The Trial Panel concluded that respondent's acts were improper in regard to the filing of a petition for divorce on behalf of Smith which recited in paragraph III thereof that plaintiff was not pregnant. Respondent changed the date on the waiver of service of summons and general entry of appearance which had been signed by Smith's prior husband on December 19, 1982, so as to reflect that said waiver of service of summons and general entry of appearance had been signed by Smith's husband on May 3, 1983, and directed his secretary to notarize the signature as of that date. Therefore, the Trial Panel recommended respondent receive a private reprimand.

Lastly, the Trial Panel recommended that the costs of the investigation, the record and disciplinary proceedings should not be surcharged against respondent.

Both counsel for the Bar Association and Stubblefield have filed briefs in response to the Trial Panel's report. Counsel for the Bar Association argues in partial support of and partial opposition to the report. The Bar Association challenges the correctness of paragraphs one and five of the Panel's findings of fact. It urges this Court to impose a private reprimand for Stubblefield's conduct alleged in Count I regarding Stubblefield's adoption of the child of his client, the biological mother, without her knowledge. Concerning respondent's misrepresentation to the trial court in the divorce petition and his act of changing the signature date on the waiver of service of summons alleged in Count II, the Bar Association argues the Trial Panel's recommendation of private reprimand is insufficient discipline. In its second amended complaint, the Bar Association had request-

ed disbarment, suspension or other discipline for such alleged unprofessional misconduct.

Stubblefield urges this Court to adopt the Trial Panel's recommendation of the sanction of private reprimand if this Court should determine discipline should be imposed.

In bar disciplinary proceedings this Court does not function as a reviewing tribunal but as a licensing court exercising its exclusive original jurisdiction.[1] Although the Trial Panel's recommendations are accorded great weight, they are merely advisory in character as the ultimate decision rests with this Court.[2] Accordingly, we will conduct a *de novo* review of the entire record before us in our consideration of the appropriate sanction to be imposed, if any, for respondent's alleged misconduct.

## COUNT I

The Bar Association asserts Stubblefield had a conflict of interest in representing Smith in the adoption matter while he was interested in adopting her child. It challenges the finding of the Trial Panel in paragraph five that Stubblefield did not represent her in the adoption proceeding, but rather the adoptive parents. It points to Stubblefield's continued representation of Smith in a divorce proceeding, child custody litigation and DUI charges coupled with the fact that his wife assisted the client throughout her pregnancy by taking her to counseling sessions, doctors' appointments, pre-natal classes and purchasing her maternity clothes on behalf of the adoptive parents. It argues Smith's other legal affairs were so intertwined they could not be dealt with separately from the adoption matter.

Alternatively, it contends even if this Court finds Stubblefield did not represent Smith in the adoption matter, he had direct and potential conflicts of interest in his representation of Smith in her other legal matters during the time he contemplated adopting, and ultimately adopted, her child as the legal matters were inextricably intertwined with the adoption proceeding. It is not contended that Stubblefield's conduct violated any statutory law. Although we have not found, nor have the parties cited, any disciplinary rules or cases which directly address the issue whether or not an attorney may adopt his/her client's child, the Bar Association maintains a lawyer who considers adopting his/her client's child should withdraw from representation and refer the client to another lawyer who could give independent counselling in view of the inherent conflict of interest. Complainant relies on general ethical principles dealing with conflict of interest and full disclosure.[3]

By analogy the Bar Association calls our attention to Informal Opinion 87–1523 (February 14, 1987) of the ABA Standing Committee on Ethics and Professional Responsibility which found an attorney may not ethically represent both the adoptive and biological parents. The present situation goes beyond this proscription in that here the adoptive parents are the client's attorney and his wife and the client purportedly had no knowledge of the adoption until after her consent became irrevocable and the adoption was granted.

Upon careful consideration of the arguments briefed and the testimony of the expert witnesses presented to the Trial Panel, including testimony of both the practicing bar and the judiciary, it is clear that reasonable minds could and do differ re-

1. *State ex rel. Oklahoma Bar Ass'n v. Samara*, 683 P.2d 979, 984 (Okla.1984).

2. *Id.*

3. a) DR 1–102, Code of Professional Responsibility, 5 O.S.1981 Ch. 1, App. 3, prohibits conduct involving dishonesty, fraud, deceit or misrepresentation.
   b) DR 4–101(B)(3) prohibits an attorney from using a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
   c) DR 5–101(A) provides:
   "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interest."

garding an attorney adopting his/her client's child.[4] Consequently, we do not believe Stubblefield's conduct warrants discipline.

■ However, we find an attorney, after today, must not adopt the child of his/her client in a private adoption proceeding unless the attorney withdraws from representation and refers the client to another lawyer who can give independent legal counsel. The ramifications of adoption proceedings are broad inasmuch as they affect three distinct interests: the natural parents, the child and the adoptive parents. Potential conflicts do exist between these interests. Moreover, "[t]he companionship, care, and management of one's child is a fundamental interest protected by both the United States and the Oklahoma Constitutions."[5]

Given this fundamental interest, a relinquishing natural parent who retains a lawyer must be afforded *independent* legal counsel, a person who's legal advise is not potentially or actually colored by his/her own self-interest in the child. Independent legal counsel serves to protect all interested parties and insures the integrity of private adoptive placement. "[A]nd more importantly, to avoid subsequent emotionally traumatic custodial changes of the adopted child."[6]

## COUNT II

■ Stubblefield does not deny the Trial Panel's finding that the divorce petition he filed on behalf of his client recited: "No children have been born of the marriage and the Plaintiff is not pregnant." Stubblefield admits he knew his client was pregnant at the time but contends his client told him the husband was not the father of the unborn child. Nor does he dispute he caused the date to be changed on the waiver of service of summons and general entry of appearance signed by the husband, and directed his secretary to notarize the signature on that date. Stubblefield testified he caused the date to be changed because his client was in a hurry and he had to satisfy the requirements of Rule 8, Rules for District Courts of Oklahoma, 12 O.S.1981 Ch. 2, App., which requires entries of appearance and waivers to be signed at least one day after the filing of the divorce petition.

We find clear and convincing evidence this misconduct constitutes intentional misrepresentation warranting discipline. Regarding the misrepresentation of fact concerning pregnancy, such action prevented the trial court in the divorce proceeding from determining whether her husband should have notice of his client's pregnancy, regardless whether Stubblefield's client told him the prior husband was not the father of the unborn child. In effect, Stubblefield's actions also prevented the trial court in the adoption proceeding from determining whether there was a living biological father of the child, from whom consent to adopt was required under 10 O.S. 1981 § 60.6 (amended 1985 and 1986). These determinations are judicial decisions and are not to be delegated to a third party, particularly an attorney who only represents the best interest of his client.[7]

Given a natural parent's protected fundamental interest in the custody and control of his/her own child and the fact that a child's best interest is presumably served by leaving him/her in the custody of his/her natural parents,[8] such attorney misconduct should not be looked upon lightly. We find the evidence on this count to clearly and convincingly establish violations of DR 1–102(A)(4) and (5); DR 7–102(A)(3), (4), (5), (6), (7), and (8); and DR 7–102(B)(1) of the Code of Professional Responsibility.

4. *State ex rel. Okla. Bar Ass'n v. Braswell*, 58 O.B.J. 3065 (November 7, 1987).

5. *Davis v. Davis*, 708 P.2d 1102, 1109 n. 33 (Okla.1985); *In re Wright*, 524 P.2d 790, 792 (Okla.1974).

6. *Adoption of Robin*, 571 P.2d 850, 858 (Okla. 1977). *See also* M. Evans, *Independent Adoptions: In Whose Best Interests?*, 53 O.B.J. 1805 (1982).

7. *State ex rel. Dept. of Inst., Soc. & R. Serv. v. Griffis*, 545 P.2d 763, 766 (Okla.1976).

8. *In re T.H.L.*, 636 P.2d 330, 332 (Okla.1981).

We have consistently recognized that the ultimate purpose in disciplining attorneys is not to punish an attorney, but to safeguard the interest of the public, to protect it and preserve the public confidence in the legal profession and the entire judicial system.[9] Safeguarding the varied interests involved in the fundamental human relationship existing between natural parents and their children warrants discipline more substantial than private reprimand in this case. We find the gravity of the offenses proven in the instant matter to be of similar nature in those cases wherein substantial disciplinary action was imposed on lawyers, a minimum of one year suspension, for making misrepresentations of material fact to the court.[10] Thus, we decline to follow the recommendation of the Trial Panel that a lesser penalty of private reprimand be imposed.

However, the good character and reputation of Stubblefield attested to by attorneys and members of the judiciary are considered by this Court in mitigation of the penalty imposed. *State ex rel. Okla. Bar Ass'n v. Steger,* 433 P.2d 225 (Okla.1966). Other than the period of time involved in the second amended complaint, there is no evidence of professional misconduct by Stubblefield for almost twenty years. He has practiced in the area of criminal law, domestic law and bankruptcy representing generally low income and uneducated clients over the years. In light of his past professional conduct, good character and reputation for almost twenty years, we find suspension for a period of thirty days to be the appropriate disciplinary action. Accordingly, Stubblefield should be, and by this opinion is, suspended from the practice of law for the period of thirty (30) days.

## COSTS

In view of the finding of no disciplinary action on Count I and the imposition of discipline on Count II, Stubblefield should only be required to pay one-half of the total costs of the proceeding in discipline. Stubblefield shall pay $2,229.25 within thirty (30) days after this opinion becomes final.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, KAUGER and SUMMERS, JJ., concur.

SIMMS and OPALA, JJ., dissent.

ALMA WILSON, J., disqualified.

SIMMS, Justice, dissenting:

I must respectfully dissent. I find the facts of this case disturbing, and in my opinion, the discipline imposed by this Court is inappropriately lenient.

Respondent knowingly and intentionally caused false documents to be filed in order to misrepresent the case to the court. Respondent even altered the waiver and general appearance to further misrepresent material facts and make it appear that his client's former husband had properly received notice. By reason of his actions, the man the law presumes to be the father of the subject child had no notice that his wife was pregnant and divorcing him. He likewise received no notice later when this child was adopted without his knowledge or consent.

The majority does find, as it must, that this conduct constituted intentional misrepresentation warranting discipline. Having done so, however, the majority then determines that a thirty day suspension is sufficient discipline although the gravity of this offense is admittedly more similar to actions where a minimum of one year suspension was imposed. The attestations of good character received on behalf of Mr. Stubblefield have, the Court states, convinced the majority that a thirty day suspension is the appropriate discipline in light of the affadavits in mitigation. I disagree.

9. *State ex rel. Okla. Bar Ass'n. v. Evans,* 747 P.2d 277 (Okla.1987); *State ex rel. Okla. Bar Ass'n. v. Raskin,* 642 P.2d 262 (Okla.1982).

10. *State ex rel. Okla. Bar Ass'n. v. Moore,* 741 P.2d 445, 446 (Okla.1987); *State ex rel. Okla. Bar Ass'n. v. Katz,* 733 P.2d 406 (Okla.1987); *State ex rel. Okla. Bar Ass'n. v. Smalley,* 55 O.B.J. 1 (Jan. 7, 1984); *State ex rel. Okla. Bar Ass'n. v. Hensley,* 661 P.2d 527 (Okla.1983); *State ex rel. Okla. Bar Ass'n. v. Peveto,* 620 P.2d 392 (Okla.1980); *State ex rel. Okla. Bar Ass'n. v. Zahorsky,* 569 P.2d 437 (Okla.1977).

Additionally, I disagree with the majority as to Count I. I view respondent's conduct as a clear and gross conflict of interest. I would have thought it beyond need for any discussion that a lawyer who had this relationship with his client and adopted her child without fully disclosing the facts to her and without her knowledge or consent, was unquestionably guilty of unprofessional conduct and flagrant self-dealing. I find no justification for the majority's position as to the allegations of professional misconduct under Count I.

It is true that many affidavits attesting to Mr. Stubblefield's good character and prior exemplary record have been offered in his support. It is also true that it is clearly appropriate for this Court to consider evidence of good character, and the reputation of the respondent within the professional community in determining his punishment. According undue significance to affidavits of good character, however, is apt to create the impression that the severity of sanctions imposed for professional misconduct may be determined by sheer weight of affidavits filed.

The purpose of a disciplinary proceeding is not to punish a practitioner but to inquire into his fitness to practice with a view to safeguarding the interests of the public, the courts, and the legal profession. The paramount goal is of course to preserve and maintain public confidence in the bar as a whole and in this Court. Mr. Stubblefield's prior record and even his unblemished history of honesty pale in light of the misrepresentations and intentional fraud practiced upon the court and the misrepresentation, fraud, and self-dealing practiced upon his client. I find it unlikely that members of the public will feel confident about a system which finds that a thirty day suspension is appropriate punishment for a lawyer who has committed the acts of deception shown to have occurred in this case.

In my opinion, Mr. Stubblefield's actions violate the very essence of the standards of the profession, best expressed by the oath taken by all lawyers, including Respondent, as set forth in 5 O.S.1981, § 2, which provides:

" . . . . [Y]ou do solemnly swear that you will support, protect and defend the Constitution of the United States, and the Constitution of the State of Oklahoma; *that you will do no falsehood or consent that any be done in court, and if you know of any you will give knowledge thereof to the judges of the court, or some of them, that it may be reformed; you will not wittingly, willingly or knowingly promote, sue, or procure to be sued, any false or unlawful suit, or give aid or consent to the same;* you will delay no man for lucre or malice, but will act in the office of attorney in this court according to your best learning and discretion, with all good fidelity as well to the court as to your client, so help you God."

I would suspend Respondent in excess of one year.

I am authorized to state that Justice OPALA joins with the views expressed herein.