STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

James T. LACOSTE, Respondent.

SCBD No. 3725.

Supreme Court of Oklahoma.

June 4, 1991.

As Corrected June 11, 1991.

John E. Douglas, Asst. Gen. Counsel, Okl. Bar Ass'n, Oklahoma City, for complainant.

Doug Friesen, Oklahoma City, for respondent.

ALMA WILSON, Justice:

Respondent lawyer was accused by Petitioner Bar Association of professional misconduct sufficient to warrant professional discipline. Thereafter, the Bar Association and the respondent submitted stipulations of fact and conclusions of law with an agreed recommendation for discipline to the Professional Responsibility Tribunal and to this Court. The trial panel accepted and approved these stipulations, conclusions and recommendation.

On the behalf of a client, Edmond Holloway, the respondent met Bettye Huddleston in the respondent's office. The respondent had agreed to give Ms. Huddleston $900.00 in exchange for a reconveyance of property which Holloway had deeded to Huddleston. Mr. Holloway gave the respondent his personal check for $900.00, but the respondent never deposited it. Before Ms. Huddleston arrived at the respondent's office, he drafted a check against his trust account in the amount of $900.00 and then called his bank in order to stop payment on the check. When Ms. Huddleston arrived, the respondent gave her his trust account check without telling her that payment had been stopped. She reconveyed the property to Mr. Holloway and executed a statement indicating that she had received the deed to the property by mistake.

After the meeting, Ms. Huddleston took the respondent's check to his bank to negotiate it and the bank refused to honor the check. Meanwhile, the respondent had gone to the Oklahoma County Court Clerk's Office where he recorded the deed. Subsequently an attorney representing Ms. Huddleston contacted the respondent who told the attorney that Mr. Holloway had directed him not to deposit Holloway's personal check and not to pay Huddleston. The respondent refused to fund the check or return the deed. In his written response to a grievance filed as a result of respondent's actions, he falsely stated that he had stopped payment on his trust account check after he had filed the deed and conferred with his client. Subsequently, when the Bar Association deposed him, his testimony was consistent with his written response concerning when he had stopped payment.

■ The respondent's conduct in representing to a party that he was presenting payment in exchange for documents when the facts reveal that his check could not be negotiated because he had stopped payment before presenting the check, violates the following Oklahoma Rules of Professional Conduct, 5 O.S.Supp.1990, ch. 1, app. 3–A:

Rule 4.1 TRUTHFULNESS IN STATEMENTS TO OTHERS

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of material fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

Rule 8.4 MISCONDUCT

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice; ...

■ The respondent's false statements to the Bar Association in his written response to the grievance and in his deposition violate Rule 5.2 of the Rules Governing Disciplinary Proceedings, 5 O.S.1981, ch. 1, app. 1–A and Rule 8.4(b) and (c) of the Rules of Professional Conduct. Rule 5.2 of the Rules Governing Disciplinary Proceedings requires that an attorney make a written response to a grievance, and that the response contain a full and fair disclosure of all the facts and circumstances pertaining to his alleged misconduct unless a refusal to do so is predicated upon expressed constitutional grounds. Failure to comply is a separate ground for discipline.

The parties stipulate and the trial panel agree that an appropriate discipline under the facts before this Court is a one year suspension from the practice of law. The parties further stipulate that the respondent will, at least one month prior to filing any affidavit for reinstatement pursuant to Rule 11.8 of the Rules Governing Disciplinary Proceedings, provide the General Counsel of the Oklahoma Bar Association a written report from a licensed psychiatrist or a clinical psychologist evaluating the respondent's emotional and psychological fitness to practice law. There are no stipulated facts concerning mental or physical illness. In the complaint filed by the Bar Association, there is no allegation that the respondent is personally incapable of practicing law, nor did it allege specific conduct or neglect of duty by the respondent which would justify imposition of psychological evaluation. The respondent's mental competency is not an issue in this proceeding. *See* Rules Governing Disciplinary Proceedings, Rules 10.5 and 10.9.

■ The transcript of the hearing reveals that there was some discussion between the trial panel and the attorneys representing the parties concerning the respondent's mental state at the time the fraudulent act occurred. Counsel for the Bar Association stated that he took this into consideration in recommending a one-year suspension instead of a more severe discipline. In mitigation the attorneys also agreed that the respondent was attempting to correct a wrong which he perceived had been perpetrated upon his client and that the respondent eventually paid the $900.00 out of his own pocket, having never cashed the check submitted to him by his client. In recommending the suspension of the respondent for one year, the trial panel and parties discussed and approved of the psychological evaluation before the respondent pursues reinstatement one year from now. Given the facts of this case as submitted on stipulations and having reviewed the transcript, we reject the recommendation concerning psychological evaluation. Although the trial panel's recommendations are accorded great weight, they are advisory in character. The ultimate decision rests with this Court. In bar disciplinary proceedings this Court functions as a licensing court exercising its exclusive original jurisdiction and conducts a *de novo* review of the entire record before us in our consideration of the appropriate sanction to be imposed when a lawyer has violated the Rules of Professional Conduct. *See Oklahoma Bar Association v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988).

Excepting the requirement for a psychological evaluation, the recommendation of the Professional Responsibility Tribunal is adopted. The respondent, James T. LaCoste, is suspended from the practice of law for a period of one year from this date. The costs of the proceedings in the amount of $521.02 shall be borne by the respondent. They are to be paid within thirty days after this opinion becomes final.

LAVENDER, DOOLIN, HARGRAVE, KAUGER, and SUMMERS, JJ., concur.

OPALA, C.J., HODGES, V.C.J., and SIMMS, J., dissent.

HODGES, Vice Chief Justice, dissenting:

"I would affirm the stipulations entered into by the parties and approved by the trial panel."

SIMMS, Justice, dissenting:

"I would reject the stipulation and remand for further proceedings in view of the statements concerning respondent's mental condition."

OPALA, Chief Justice, dissenting.

The court today visits upon the respondent a one-year suspension, approving the sanction adopted by the Professional Responsibility Tribunal [PRT], which rested its decision on the parties' submission by stipulated facts. The court rejects that part of PRT's recommendation which would require respondent to undergo a psychological evaluation before his reinstatement. The charges under consideration, all stemming from respondent's conduct of his client's business with a third party, rest on (a) his misrepresentation to a third party that respondent was exchanging a check drawn on his trust account for a reconveyance of the client's property and (b) his making false statements to the Bar in the course of its investigation.

The discipline imposed today is, in my view, much *too harsh.* I would not, *on this record,* apply the very same sanction as that recently visited upon a lawyer who was found guilty of inflicting grave *economic harm upon his own client.*[1] This respondent does not appear to fall into a class of serious offenders. I would remand this proceeding for *PRT's full-scale adversary inquiry* into the offenses charged as well as into the circumstances surrounding respondent's *"suspected"* emotional unfitness, past or present. Only after PRT's full exploration of pertinent *proof* would I decide what disciplinary sanction, if any, might be warranted in this proceeding.

CRITICAL FACTS

Respondent gave to a third party a $900.00 check, drawn on his trust account, for reconveyance to his client of previously deeded property. The third party came to respondent's office and signed a deed represented as an exchange for the agreed-upon amount of money. The deed was promptly recorded in the county clerk's office. *Before the check was picked up respondent had directed his bank to stop payment on the item.* At the PRT hearing respondent explained he was attempting to right a wrong he perceived the third party has done to the client. After the Bar investigation had begun, respondent *twice misstated* the exact time when he stopped payment on the $900.00 check. Later respondent allegedly paid the third party out of his own funds. The client's check given respondent for the reconveyance in issue was never cashed. *No mitigating factors are included in the stipulated facts.* According to the transcript, respondent's counsel *offered in mitigation* no more than *his own statement* that when the incident occurred respondent was in a condition described as DSM III—a diagnostic term for a syndrome. The symptoms associated with this condition prevent the two sides of the brain from interacting normally. An expert quoted by respondent's lawyer believed that this syndrome has thrown respondent into a state of mental imbalance when it came to be superimposed on his divorce-generated stress.

I

RESPONDENT'S DERELICTIONS DO NOT WARRANT THE SANCTION IMPOSED BY TODAY'S PRONOUNCEMENT

The court visits upon respondent the very same sanction—a one-year suspension—that was imposed in *State ex rel. Okl. Bar Ass'n v. Gasaway.*[2] The dereliction charged here does not match the gravity and severity of the misconduct in *Gasaway.* The latter was charged with com-

---

**1.** *State ex rel. Okl. Bar Ass'n v. Gasaway,* Okl., 810 P.2d 826 (1991).

**2.** *Supra* note 1.

mingling and misusing client funds. Gasaway stopped short of making a full disclosure to the Bar concerning the grievance. There, the respondent had filed neither a brief nor a response to the complaint or to the motion to tax costs and offered no facts showing mitigating circumstances. For that offense, the PRT had recommended in *Gasaway* (a) a minimum suspension of *six months* and, (b) upon the respondent's readmission to the practice of law, supervision by a lawyer qualified as a certified public accountant. The court viewed the PRT-recommended discipline as too lenient. It imposed on Gasaway a *one-year suspension*.

The shocking disparity in the PRT-recommended sanction in *Gasaway* (six months) and that in the present case (one year) militates against adopting the stipulated-for discipline attached to the plea bargaining agreement. The former case was *not* based on a plea bargain, while this case is. The respondent here clearly does not fall within a class of most serious offenders—those who have dealt serious economic harm to a client. On the contrary, his misconduct occurred when he was acting *in behalf of a client,* though in an overzealous, deceitful and misguided way. The relationship between a lawyer and a client calls for *uberrima fides* [3]—an exercise of the highest degree of integrity and fidelity known to the law.[4] A lawyer can commit no graver offense than that of economically harming his/her own client—whether that be done by stealing, embezzling or otherwise acting in a manner contrary to the client's interest.[5]

I cannot accede to imposing here the very same sanction as that in *Gasaway.* The *stipulated facts, considered alone,* clearly call for a lesser quantum of discipline.

## II

**IN BAR DISCIPLINARY CASES THIS COURT'S CONSTITUTIONAL RESPONSIBILITY TO CONDUCT A *DE NOVO* REVIEW CALLS FOR A MUCH FULLER RECORD THAN THAT PRESENTED BY THE PRT HEARING TRANSCRIPT IN THIS CASE**

Our primary task in disciplinary cases is to protect the public and to preserve its confidence in the legal profession as well as in the judicial authority that licenses lawyers. The maintenance of high standards of the Bar's fitness—intellectual ethical, mental and emotional—is one of this court's heavy constitutional responsibilities.[6] A responsible exercise of our constitutional duty—that of ascertaining this lawyer's present and future fitness to practice law—cannot be done without a *full-scale exploration of all the pertinent facts.*

This court's review of disciplinary proceedings is conducted by *de novo* consideration of the record before us.[7] The evidence to be reviewed is never to be deemed *"completely settled" beyond our ability to*

3. *Uberrima fides* is defined as the "most abundant good faith; absolute and perfect candor or openness and honesty; the absence of any concealment or deception, however slight." Black's Law Dictionary, p. 1363 [5th Ed.1979]; see also in this connection *Panama Processes v. Cities Service Co.,* Okl., 796 P.2d 276, 290 n. 62 and 63 (1990).

4. *State ex rel. Okl. Bar Ass'n v. Colston,* Okl., 777 P.2d 920, 925 (1989); *State ex rel. Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 267 (1982).

5. *State ex rel. Okl. Bar Ass'n v. Raskin, supra* note 4 at 267.

6. *State ex rel. Okl. Bar Ass'n v. Colston, supra* note 4 at 925; *State ex rel. Okl. Bar Ass'n v. Raskin, supra* note 4 at 267. *See in this connec-*tion Alpert, The Inherent Power Of The Courts To Regulate The Practice Of Law: An Historical Analysis, 32 Buffalo L.Rev. 525 (1983).

7. *State ex rel. Oklahoma Bar Ass'n v. Perceful,* Okl., 796 P.2d 627, 630 (1990) (Opala, V.C.J., dissenting); *State ex rel. Okl. Bar Ass'n v. Lloyd,* Okl., 787 P.2d 855, 858 (1990) [*Lloyd* II]; *Oklahoma Bar Ass'n v. Stubblefield,* Okl., 766 P.2d 979, 982 (1988); *State ex rel. Oklahoma Bar Ass'n v. Cantrell,* Okl., 734 P.2d 1292, 1293 (1987); *State ex rel. Okl. Bar Ass'n v. McNaughton,* Okl., 719 P.2d 1279, 1282 (1986); *State ex rel. Okl. Bar Ass'n v. Raskin, supra* note 4 at 265–266.

*expand it.*[8] The case *always* remains within this court's plenary power to order supplementary hearings. The record in a bar case is to be deemed complete when the range of inquiry conducted by the PRT is found to be fully co-extensive with that which this court deems to be appropriate for the disciplinary proceeding that stands under its *de novo* review. Every aspect of the Bar's adjudicative process, from its beginning to the end, is an exercise of this court's *original* and *exclusive* constitutional cognizance over lawyers.[9] Our power to discipline legal practitioners is *nondelegable.*[10] *A deficient record can never afford grounds for this court's abdication of its constitutional responsibility to conduct a meaningful de novo review.*

A plea bargain is a bipartite arrangement for disposition of a pending charge, which ultimately calls for tripartite action that requires the assent of the prosecution, the accused and the tribunal.[11] A plea bargain ordinarily contemplates that the offender will admit the commission of the acts that constitute the charge in exchange for a reduced count and some milder form of punishment.[12] Both the accused and the government profit from a plea bargain— the offender's benefit comes from an assured leniency of treatment and the state's from the preservation of finite judicial and financial resources *via* the accused's waiver of trial.

Although plea bargains do expedite proceedings and save time, the device is neither a fit shortcut nor a substitute for constitutional due process. In *Boykin v. Alabama*[13] the Court held that a guilty plea to a common-law robbery, which resulted in a death sentence, does not conform to the minimum standards of due process if the record fails to disclose that the defendant voluntarily and intelligently admitted committing the acts charged by the government. *Similarly, the plea bargaining process revealed by the transcript here cannot be used to undercut this court's constitutional responsibility for a meaningful and fair de novo review of the recommended sanction's correctness.*

The quality of process due in this case requires not only that all elements of the charge, but likewise that the mitigating and aggravating factors, be flushed out— i.e., be demonstrated by the record. No deference can be accorded here to the PRT's findings. *De novo review is rested either on evidence or on stipulated facts—it may never hinge, as it does here, on a lawyer's "mouthings"*—i.e. unsworn statements of a forensic advocate about the respondent's emotional and mental problems. Our responsibility to review bar proceedings *de novo* is not discharged in a meaningful manner when the record on which our consideration is to be made reveals no more than the lawyer's admission of guilt. No such plea bargain is entitled to an automatic approval by receiving this court's instant and uncritical imprimatur.

I cannot countenance the use of plea bargaining for accelerated disposition of bar prosecutions if the stipulations tendered for PRT's approval give less than complete insight not only into the circumstances of the count charged but also into the aggravating or mitigating circumstances that bear upon the quantum of

---

**8.** *State ex rel. Oklahoma Bar Ass'n v. Perceful* (Opala, V.C.J., dissenting), *supra* note 7 at 631.

**9.** *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113 (1939) (the court's syllabus); *Tweedy v. Oklahoma Bar Ass'n,* Okl., 624 P.2d 1049, 1052 (1981); *State ex rel. Okl. Bar Ass'n v. Raskin, supra* note 4 at 265–266; *see also* Alpert, The Inherent Power Of The Courts To Regulate The Practice Of Law: An Historical Analysis, *supra* note 6.

**10.** *In re Integration of State Bar of Oklahoma, supra* note 9; *Tweedy v. Oklahoma Bar Ass'n, supra* note 9; *State ex rel. Okl. Bar Ass'n v. Raskin, supra* note 4.

**11.** *People v. Yu,* 191 Cal.Rptr. 859, 866, 143 Cal.App.3d 358 (1983), *cert. den., Yu v. California,* 464 U.S. 1072, 104 S.Ct. 981, 79 L.Ed.2d 218 (1984); *Way v. Superior Court for Cty. of San Diego,* 141 Cal.Rptr. 383, 393, 74 Cal.App.3d 165 (1977).

**12.** *State v. Andrews,* 282 Minn. 386, 165 N.W.2d 528, 532 n. 4 (1969).

**13.** 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).

discipline to be meted out. The admitted facts leave us in the dark and severely shortchanged. The agreed findings tendered to this court do not stipulate facts needed for a meaningful exercise of *de novo* review over the quantum of disciplinary sanctions to be visited.

My analysis of the scanty record is not intended to disparage either the quality or the integrity of the decisional process accorded this case either here or by the PRT. Rather, the purpose of my writing is to highlight a recurrent but underappreciated flaw [14] in the framework of stipulations offered for a plea-bargained disposition. When the accused's mental or emotional state is drawn in question on the record [15] as an element in mitigation, the transcript of a bar proceeding must incorporate evidence adequate for this court's *de novo* assessment of the affected lawyer's clouded health condition. This task cannot be done from a silent record.

## III

### RESPONDENT'S EMOTIONAL OR MENTAL FITNESS

In every disciplinary proceeding this court must inquire into a practitioner's continued fitness with a view to safeguarding the interest of the public, of the courts and of the legal profession.[16] Once the issue of a lawyer's mental or emotional fitness is raised, whether by complaint, during the course of the Bar's investigation or at a PRT hearing, the facts must be fully explored to guard against excessive or overly lenient sanction and against unsafe or premature reinstatement.[17]

The respondent's emotional or mental fitness cannot be the subject of *de novo* review on the record submitted here. *There are neither agreed facts nor proof dehors stipulations that shed light on respondent's mental or emotional fitness to practice law, either now, before, or in the future.* The transcript contains only the statements of respondent's lawyer as to the client's mental and emotional state, his sessions with a therapist and his need for medication. These are but arguments which do not rise to the level of legal evidence. This case stands in the same posture as did *Lloyd I*[18] when it made its initial appearance in this court. Just as *Lloyd I* had to be remanded for a full-scale PRT inquest to cure a deficient record, so must this case.

I would hence direct that this cause undergo a full and meaningful adversary inquest into the respondent's emotional or mental state, past, present and, if possible, into his prognosis; I would defer imposition of discipline until the facts bearing on respondent's mental and emotional conditions have been probed and assessed in a PRT hearing upon remand. A new recommendation, based on added elicited or stipulated facts, should be substituted for that which stands presently tendered.

---

**14.** See *State ex rel. Oklahoma Bar Ass'n v. Perceful* (Opala, V.C.J., dissenting), *supra* note 7 at 631, where a similar flaw was discovered.

**15.** See, e.g., *Ex parte Lewis,* 85 Okl.Cr. 322, 188 P.2d 367, 381, 386–387 (1947).

**16.** *State ex rel. Okl. Bar Ass'n v. Raskin, supra* note 4 at 267.

**17.** A lawyer's mental or emotional condition may be shown to demonstrate his capacity for rehabilitation and fitness to practice law. *State ex rel. Okl. Bar Ass'n v. Colston, supra* note 4 at 925. For a discussion of the importance of mental and emotional fitness of bar applicants, see generally Maher and Blum, A Strategy for Increasing the Mental and Emotional Fitness of Bar Applicants, 23 Ind.L.Rev. 821 (1990).

**18.** *State of Oklahoma ex rel. Oklahoma Bar Association v. James R. Lloyd,* SCBD No. 3455, received November 17, 1987 [*Lloyd I*]. For an explanation see *Lloyd II, supra* note 7 at 856. There we stated that this "court declined to approve the ... [PRT-recommended] discipline" in *Lloyd I* and "remanded the complaint for a full evidentiary hearing before the PRT panel whence it came."