**Craig TWEEDY, Plaintiff,**

v.

**OKLAHOMA BAR ASSOCIATION, its Officers and Board of Governors, Defendants.**

**No. 55565.**

Supreme Court of Oklahoma.

Feb. 10, 1981.

Craig Tweedy, pro se.

Annis M. Kernan, Oklahoma City, for defendants.

OPALA, Justice:

The single first-impression issue here is whether the Supreme Court—the state government's organ acting in both the legislative and adjudicative capacity when exercising its constitutionally-derived responsibility for the control and regulation of the practice of law and for the licensing and

ethics of legal practitioners—may cast itself in the added role of the bar discipline's ultimate enforcer by commanding the prosecutorial arm of the state bar agency (the Professional Responsibility Commission of the Oklahoma Bar Association) to conduct a second re-investigation of a grievance alleging a lawyer's breach of professional conduct.

We hold that the exercise of power sought to be invoked—to command a second re-investigation of the grievance—is inconsistent with this court's constitutionally-mandated duty to act as the state's sole and final tribunal for adjudication of disciplinary bar charges.

Plaintiff [Tweedy] lodged with the state bar agency a disciplinary grievance against three legal practitioners.[1] Upon two separate investigations, the Professional Responsibility Commission [Commission] found the grievance unripe for the institution of formal disciplinary charges.[2] The decision was doubtless influenced by the pendency of certain civil litigation in which the subject matter of the alleged professional misconduct was in the process of adjudication. Tweedy, a licensed Oklahoma lawyer, seeks here an order (a) commanding a second re-investigation of his grievance and (b) establishing a bar agency's committee to study the Commission's needs for a larger staff of lawyers, a bigger budget and for better investigative procedures and resources.

## I.

## DUE PROCESS LIMITS UPON A JUDICIAL TRIBUNAL'S EXERCISE OF PROSECUTORIAL FUNCTIONS

■ The Supreme Court claims for itself the constitutionally-invested power to control and regulate, in this State, the practice of law and the licensing, ethics and discipline of legal practitioners. The state bar agency—with its constituent body, the *Board of Bar Examiners—functions as an* organ of the Supreme Court aiding it in the performance of the judiciary's mandated mission of our fundamental law.[3] The bar's government—much like the licensing and professional responsibility of legal practitioners—is structured by rules. All of these rules[4] are promulgated by this court in the exercise of a *legislative function* as the bar's *regulator.*[5] The essential characteristics of the court's responsibility as a *regulator* are to be distinguished from those which attend an exercise of its jurisdiction as the sole and final arbiter of the practitioner's standing and status before Oklahoma courts. In the latter capacity this court functions, not as a *legislator* but rather *qua adjudicator.*[6]

■ Within an administrative agency the merger of investigative and enforcement responsibility with that of adjudication is not forbidden as a violation of due process if in the broader institutional framework safeguards do exist against unchecked administrative discretion and its

1. Art. 10 § 2, Rules Creating and Controlling the State Bar Association, 5 O.S.Supp.1980, Ch. 1, App. 1.

2. The terms of Art. 10 § 2(a), *supra* note 1, provide that upon consideration of the recommendation of the General Counsel, the Commission may: "(a) direct that no formal disciplinary proceedings be commenced and that General Counsel advise complainant the factual circumstances do not warrant further investigation or disciplinary action."

3. *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113 [1939]; *Ford v. Board of Tax-Roll Corrections,* Okl., 431 P.2d 423 [1967].

4. Code of Professional Responsibility, 5 O.S. 1971, Ch. 1, App. 3; Code of Judicial Conduct, 5 O.S.Supp.1980, Ch. 1, App. 4; Rules Govern-

ing Admission to Practice of Law in the State of Oklahoma, 5 O.S.Supp.1980, Ch. 1, App. 5; and Rules Creating and Controlling the State Bar Association, *supra* note 1.

5. *Lathrop v. Donohue,* 367 U.S. 820, 825, 81 S.Ct. 1826, 1828, 6 L.Ed.2d 1191, 1195 [1961]; *Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641, 653 [1980]; *State ex rel. Oklahoma Bar Association v. Denton,* Okl., 598 P.2d 663, 665–666 [1979] (Opala, J., dissenting).

6. *Supreme Court of Virginia v. Consumers Union of the United States, supra* note 5; *In re Summers,* 325 U.S. 561, 566–567, 65 S.Ct. 1307, 1312, 89 L.Ed. 1795 [1944].

abuse. The union of these functions is constitutionally countenanced so long as provisions do exist for the legislature to change the agency's rules and the judiciary is free effectively to correct errors occurring in administrative adjudication.[7]

In contrast to the principles which affect administrative agencies, *due process is offended* when a judicial institution functions both as an organ of enforcement and adjudication. Concentrating the powers of judge and prosecutor in the same person or body poses an unreasonably high risk of compromising the protected and cherished value of judicial detachment and neutrality.[8]

## II.

## SEPARATION OF POWERS AND DUE PROCESS CONSIDERATIONS

While our state constitution expressly institutes a tripartite division of government responsibilities,[9] it does not categorically forbid one department to exercise—as a mere incident of its general mission—powers which, while not expressly delegated to another, might have been more appropriately reposed elsewhere. The legislature initiates and holds impeachment trials, agencies of the executive service administer adjudicative process and courts legislate interstitially by fashioning and promulgating rules of procedure—to give but some examples of a permissible merger of powers. Each of the three divisions of our government—state and federal—does, on occasion, execute powers of the general kind that belong primarily to one of the other two departments. If these functions are not, by express constitutional delegation, set apart to another division of government and so long as they can be compatibly combined in one institution, they are held to remain within the sphere

7. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 [1975].

8. *Figueroa Ruiz v. Delgado,* 359 F.2d 718 [1st Cir. 1966]; In *Figueroa,* the court held the union of judge-prosecutor responsibilities, by which the judge was called upon to introduce the government's evidence and cross-examine adverse witnesses, denied the accused due process of law. The union was deemed constitutionally impermissible because it deprived the accused of a neutral and independent trier. Vesting prosecutorial duty in a judge is incompatible with the Constitution's command for an untrammeled exercise of adjudicative function. *Iglesias-Delgado v. Rivera-Rivera,* 430 F.Supp. 309, 311 [D.Puerto Rico 1976]; *Burhoe v. Whaland,* 166 N.H. 222, 356 A.2d 658 (1976).

In a series of cases in which the judge, who had previously charged a party with contempt, presided over the subsequent trial, the U.S. Supreme Court held that under the Due Process Clause of the Fourteenth Amendment the contemnor was entitled to be tried before another judge. *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 [1971]; *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 [1955]. In *Murchison,* a judge had acted under state law as a one-man grand jury and later tried recalcitrant witnesses on contempt charges for their refusal to answer questions at the inquest. The Court held that the judge who had sat as a one-man grand jury was part of the accusatory process. The Court held that one who actively participates in the inquest "cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." 349 U.S. at 137, 75 S.Ct. at 626, 99 L.Ed. at 947. "Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer." 349 U.S. at 137, 75 S.Ct. at 626, 99 L.Ed. at 947; *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 [1927]; *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 [1972].

The very same principle obtains in the English Law. Although the concept of constitutional "due process" is not known to that legal system, English appellate courts "quash" (reverse) decisions both by judicial and quasi-judicial tribunals whose member (or members) is found to have been intimately connected with the prosecution function. *Adan Haji Jama v. The King, Judicial Committee of the Privy Council* [1948] (reported in Merrill, Cases and Materials on Administrative Law, Vol. I, p. 173 [1950]); *Queen v. London County Council,* 1 Q.B. 190 [1892]; *Frome United Breweries Co., Ltd. v. Justices for County Borough of Bath,* A.C. 586 [1926].

9. The terms of Art. 4 § 1, Okl.Con. provide: "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

permitted by fundamental law. The very same rule seems to be applied by the federal judiciary.

Even though the federal constitution—unlike our own—does not explicitly enjoin a division of responsibilities among the three branches,[10] neither does it expressly authorize their merger. Combining incompatible functions in one agency, or allowing one division to usurp powers expressly delegated to another, is generally deemed offensive to constitutional order, whether the separation-of-powers doctrine is explicitly mandated by the text (of the document) or is merely recognized as implicit in its provisions.[11]

Legislative, as distinguished from executive, power is the authority to make law, but not to execute it or to appoint agents charged with the duty of enforcement. The latter is purely an executive function.[12]

In Oklahoma, the responsibility for legislation, prosecution and adjudication in the arena of professional discipline of legal practitioners is constitutionally reposed in the judicial department.[13] While legislative and adjudicative functions are performed by this court, the enforcement role stands delegated to the organs of the state bar. A decision to, or not to, re-investigate a complaint and one to, or not to, charge are akin to each other. They result from the same reasoning process. Both exemplify an exercise of prosecutorial judgment that *precedes* courtroom presentation and *judicial* testing of evidence. The process employed in reaching *both* decisions calls for comparative weighing of proof *at hand,* and other likely to be *obtainable, against* that which is *required* to support a legally cognizable charge. *Every* decision in which that kind of *discretionary assessment of proof* has to be made *before*

10. The federal constitution specifies that the two Houses of Congress must act jointly in enacting legislation, but it does not define legislation. Neither does it precisely limit certain powers to the executive branch. The respective role of each branch has been defined, in significant part, by an accommodation of affirmatively granted functions. This results in *de facto* limitations on each branch's power sweep.

11. The federal principle of separation of powers came to be recognized and enforced when the U. S. Supreme Court held that (a) executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Art. III of the federal constitution [*United States v. Ferreira,* 54 U.S. 40, 13 How. 40, 14 L.Ed. 42 (1852); *Hayburn's Case,* 2 U.S. 409, 2 Dall. 409, 1 L.Ed. 436 (1792); (b) the President may not execute and exercise legislative authority belonging only to Congress (*Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952); (c) the legislature could not vest in itself the power to make appointments to executive agencies, *Springer v. Philippine Islands,* 277 U.S. 189, 201–202, 48 S.Ct. 480, 482, 72 L.Ed. 845, 849 [1928]; and (d) Congress cannot create a governmental entity (Federal Election Commission), appoint members thereof and confide in that body powers which go beyond those which Congress might delegate to one of its own committees. Most of the powers conferred by the Congress on the Commission were deemed to be exercisable only by those appointed in conformity with the Appointments' Clause (Art. II

§ 2, U.S.Con.), i. e. by the President. Some of the impermissibly created powers included: conducting civil litigation, exercising rule-making authority and power to determine eligibility for funds and for a federal elective office. *Buckley v. Valeo,* 424 U.S. 1, 143, 96 S.Ct. 612, 794, 46 L.Ed.2d 659, 759 [1976].

12. *Springer v. Philippine Islands,* supra note 11. The decision to prosecute a criminal case in behalf of the government is an executive one. It rests with an agency of the executive department. In Oklahoma, *no* prosecution can be instituted except by presentment or indictment by a grand jury, or by information filed by the prosecuting attorney. Art. 2 § 17, Okl.Con.; *State ex rel. Pitchford v. District Court of 24th Judicial Dist.,* Okl.Cr., 323 P.2d 993 [1958]. A grand jury's return of a true bill (indictment) is similar to a decision to prosecute. It is not a judicial act but a decision of an accusatory appendage to the court. A grand jury functions as an inquisitorial body. Once it is convoked by the court, its duty is to investigate law violations. *Oklahoma Tax Commission v. Clendinning,* 193 Okl. 271, 143 P.2d 143 [1944]; *Bennett v. District Court of Tulsa,* 81 Okl.Cr. 351, 162 P.2d 561 [1945]. *Within the Anglo-American legal system, the decision to prosecute has always belonged to the crown (executive), not the judiciary. In re McNaught,* 1 Okl.Cr. 528, 99 P. 241, 243–244 [1909].

13. *In re Integration of State Bar of Oklahoma,* supra note 3.

charges are brought must remain free of the Supreme Court's control lest due process be contravened.[14]

 While as a legislator in the arena of bar ethics and discipline, this court can and does fashion, by rules, the necessary prosecutorial machinery, it cannot itself exercise enforcement powers for, or on behalf of, the instrumentality it has created. Once an institutional design for the discharge of prosecutorial function has been structured, this court can no longer cast itself in the dual role of judge and enforcer to command or control, directly or obliquely, the institution of bar charges. An exercise of both functions would be inconsistent with this court's constitutionally-mandated responsibility for adjudication of bar disciplinary proceedings.[15]

 Neither party disputes that under Art. 10 § 3 [16] the state bar's Board of Governors [Board] may re-examine the actions of the Commission. So far as the record before us shows, Tweedy has never invoked the Board's reviewing power. We must therefore conclude that his non-judicial remedies have not been exhausted.

## CONCLUSION

We do not reach here Tweedy's request that a larger staff and budget be allotted to the Commission. That issue is not justiciable in this proceeding. It should first be presented to the Board of Governors. In case of a negative disposition, the problem could reach us later as a fit subject for our managerial concern *dehors* the adversarial framework of litigation process.

 Petition is denied because the power sought to be invoked may not be exercised consistently with the minimum standards of due process and compatibly with this court's constitutional responsibility for the administration of the disciplinary bar jurisdiction.[17]

IRWIN, C. J., and WILLIAMS, LAVENDER and HARGRAVE, JJ., concur.

SIMMS, J., concurs in part and dissents in part.

BARNES, V. C. J., and HODGES, J., not participating.

---

**14.** Art. 2 § 7, Okl.Con. The enforcement mechanism of our Professional Responsibility Code, 5 O.S.1971, Ch. 1, App. 3, and its disciplinary rules differ from those in Virginia. There, as pointed out in *Supreme Court of Virginia v. Consumers Union of the United States, supra* note 5, the Virginia court, in addition to the exercise of its inherent legislative and adjudicative powers, also claims independent authority to initiate disciplinary proceedings against lawyers. That enforcement power may be exercised in Virginia by both the Supreme Court and the state bar. This union of functions, we believe, is constitutionally impermissible. It violates due process by tainting the constitutionally-mandated requirement for judicial detachment and neutrality. *Tumey v. Ohio, supra* note 8; *Ward v. Village of Monroeville, supra* note 8.

**15.** The union is no less impermissible here than when the legislature or Congress creates a commission with rule-making and enforcement powers and then vests in itself the authority to appoint those who will execute its laws. *Springer v. Philippine Islands, supra* note 11; *Buckley v. Valeo, supra* note 11.

**16.** Rules Creating and Controlling the Oklahoma Bar Association, *supra* note 1. The terms of Art. 10 § 3 provide in pertinent part: "The Board of Governors, upon consideration of the report and recommendations of the Commission and any other document or evidence that it deems appropriate, may order: (a) further investigation and/or hearing; * * * ".

**17.** Were we to exercise the powers sought to be invoked here and the re-investigation resulted in disciplinary charges being brought, the three lawyers adversely affected by the action could claim denial of due process. This is so because the charges against them would be reached for ultimate adjudicative disposition by the judicial tribunal which, in effect, had ordered their prosecution—one which assumed to wield combined adjudicative and enforcement powers. Art. 2 § 7, Okl.Con.; *In re McNaught, supra* note 12; see also Due Process Clause of the 14th Amendment, U.S.Const.; *In re Murchison, supra* note 8.