Dear Governor Bellmon,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
 Are the separation of powers requirement of Article IV, 1 of the Oklahoma Constitution, or the Governor's appointment powers at Article VI, Section 13 of the Oklahoma Constitution, violated by the enactment of any or all of the following statutes:
 1. The provisions of 8 O.S. 203 (1988), which, in accordance with the Oklahoma Sunset Law, re-created the State Burial Board, and in doing so provided the persons, serving on the Board on June 30, 1988, shall continue to serve the full terms for which they were originally appointed;
 2. The provisions of 59 O.S. 1203 (1988), which, in accordance with the Oklahoma Sunset Law, created or re-created the State Board of Registration for Foresters, and in so doing provided that persons serving on the Board on June 30, 1988, shall continue to serve the full terms for which they were originally appointed; and
 3. The provisions of 59 O.S. 1455 (1988), which, in accordance with the Oklahoma Sunset Law, created or re-created the Polygraph Examiners Board, and in so doing provided that persons serving on the Board on June 30, 1988, shall continue to serve the full terms for which they were originally appointed.
 I. OKLAHOMA'S SUNSET LAW
¶ 1 In 1977, the Oklahoma Legislature adopted the Oklahoma Sunset Law, 74 O.S. 3901 (1981) et. seq. The Sunset Law provides for the automatic termination of state departments, agencies, commissions, boards and other regulatory instrumentalities of state government. Under the Act some agencies were scheduled to be terminated as early as July 1, 1987 (Okla. Sess. Laws 1977, c. 9, 6), while other agencies were scheduled for termination on July 1 of various years thereafter. (See 74 O.S. 3903, 74 O.S. 3904 (1981) and 74 O.S. 3905, 74O.S. 3906, 74 O.S. 3907, and 74 O.S. 3908 (1988).)
¶ 2 The Sunset Law established the Joint Committee on Sunset Review (74 O.S. 3902.1 (1988)), and also established procedures for the continuation or re-creation of statutory entities beyond their scheduled termination. 74 O.S. 3911-74 O.S. 3917
(1988). Included in these provisions is section 3911. That section provides that the terms of office for officers of statutory entities continue through the Sunset Law termination process, surviving both termination and re-creation by the legislature:
 After a statutory entity has been recreated by the Legislature, it will not be necessary to reappoint any member of the governing board or commission of said statutory entity, and said members shall complete their original terms without reappointment or reconfirmation.
¶ 3 The statutes you inquire about (8 O.S. 203 (1988); 59O.S. 1203 (1988), and 59 O.S. 1455 (1988)), all contain provisions indicating that the original terms of the officers serving on the affected boards would, in conformity with the provisions of 74 O.S. 3911 (1988), continue beyond and survive the Board's recreation or continuation under the Sunset Law, each statute providing:
 The persons serving on the Board on June 30, 1988, shall continue to serve the full terms for which they were originally appointed until their successors have been duly appointed and approved with the advice and consent of the Senate.
 II. SEPARATION OF POWERS AND POWER TO APPOINT
¶ 4 Article IV, Section 1 of the Oklahoma Constitution provides for the separation of powers between the three branches of government as follows:
 The powers of the government of the State of Oklahoma shall be divided into three separate departments: the Legislative, Executive, and Judicial; and except as provided by this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.
¶ 5 Article VI, Section 13 of the Oklahoma Constitution provides for the Governor's appointing powers as follows:
 The Governor shall commission all officers not otherwise commissioned by law. All commissions shall run in the name and by the authority of the "State of Oklahoma," be signed by the Governor, sealed by the Great Seal of the State of Oklahoma, and attested by the Secretary of State. When any office shall become vacant, he shall, unless otherwise provided by law, appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law.
(Emphasis added).
¶ 6 In 1914, the Oklahoma Supreme Court was called upon to consider the Separation of Powers Doctrine of Article IV, Section1 of the Oklahoma Constitution, and the Governor's appointment powers provided for at Article VI, Section 13. The case before the Court was Riley v. State, ex rel. McDaniel, 141 P. 264
(Okla. 1914). In that case the Court determined the validity of Okla. Sess. Law 1913, c.157, 1, in which the Legislature created the State Election Board and provided that the Secretary of the State Senate shall be the Secretary for that board. The contention raised by the defendant, who challenged plaintiff's reliance on the statute, was that under the Separation of Powers Doctrine and the Governor's constitutional appointment power, the Legislature could not create an office, then fill the office or appoint the person who is to discharge the duties of the office.
¶ 7 In passing on the Governor's appointing power the Riley
Court stated:
 Generally the power to select officers of the state is not an exclusive function of either the executive, legislative, or judicial branches. Primarily, the power resides in the people, and they alone are authorized to say by what instrumentality the power may be exercised. Citation omitted.
 It is true that under our Constitution and laws, the duty of commissioning public officers mainly devolves upon the Governor, but that situation arises out of the fact that there are a great many "officers not otherwise commissioned by law," who under the constitution must be commissioned by the Governor, and not out of any inherent power of appointment possessed by the Governor by virtue of his office.
141 P. 264 at 265.
¶ 8 After so commenting, the Riley Court went on to find that it was within the Legislative prerogative to appoint the Secretary of the Senate and fix his duties, as the term "Secretary of the State Senate" was sufficiently descriptive of the nature of the office to make it clear that the person holding the office was an officer of the legislative department.
¶ 9 While the Riley decision established that the Legislature possesses the power to appoint legislative officers, both Oklahoma and federal case law militate in favor of a different view when the Legislature seeks to appoint executive officers.
¶ 10 Like the United States Constitution's Separation of Powers Doctrine, the Oklahoma Constitution's Separation of Powers Doctrine is based, in part, upon the views of the French political philosopher Baron Charles-Louis de Montesquieu. See Inre County Commissioners, 98 P. 557, 561 (Okla. 1908). In that case, the Oklahoma Supreme Court, among other things, considered the propriety of Okla. Sess. Laws 1907-08, c.46, p. 453, which provided that upon the recommendation of the Supreme Court "the Governor shall appoint an additional judge for such district for the time recommended by the court." Finding such provision violative of the Separation of Powers Doctrine, the Court stated:
 In this case the provision is that the judiciary shall fix the term of office, which is a legislative act, and in no event in the nature of a judicial act. The power to be exercised is neither judicial, nor in aid of any judicial function.
98 P. 557 at 561-562. (Emphasis added).
¶ 11 In reaching this conclusion the Court noted Montesquieu's teaching on separation of powers:
 The founders evidently had in mind Montesquieu's Dissertation on the Spirit of the Laws, wherein he said:" There is no liberty, if the power of judging be not separated from the legislative and executive powers, when the legislative, and executive powers are united in one body or person. There can be no liberty, because apprehensions may arise lest the same monarch or senate should enact tyrannical laws to execute them in a tyrannical manner. * * * Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would then be the legislator."
98 P. 557 at 561.
¶ 12 See also Buckley v. Valeo, 424 U.S. 1, 120-121,96 S.Ct. 612, 46 L.Ed.2d 659 (1976), in which the Court noted Madison's reliance on the same technique of Montesquieu in Federalist Papers No. 47. In that case the United States Supreme Court held unconstitutional Congress's appointment of the members of the Federal Election Commission, an executive agency.
¶ 13 In Springer v. Philippine Islands, 277 U.S. 189,201-202, 48 S.Ct. 480 (1928), the United States Supreme Court held invalid legislation which created an executive committee, and at the same time appointed members of the legislature to that committee. In so ruling the Court stated:
 Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions.
277 U.S. at 202.
¶ 14 Recently, the Oklahoma Supreme Court came to a similar conclusion in Tweedy v. Oklahoma Bar Association,624 P.2d 1049, 1054 (Okla. 1981). In Tweedy, plaintiff petitioned for an order requiring the Bar Association to conduct a reinvestigation of attorney disciplinary grievances. Holding that the decision whether to reinvestigate a complaint was an executive function, the Court concluded that it could not exercise that function. In discussing the Separation of Powers Doctrine, the Court briefly commented on the nature of legislative power, and in so doing stated:
 Legislative, as distinguished from executive, power is the authority to make law, but not to execute it or to appoint agents charged with the duty of enforcement. The latter is purely an executive function.
624 P.2d at 1054.
¶ 15 Thus, we see that while the Legislature may make law, it is not generally empowered to appoint the agent charged with the duty of enforcing the law.
 III. APPLICATION OF THE SEPARATION OF POWERS DOCTRINE AND POWER TO APPOINT TO PRESENT SITUATION
¶ 16 The situation presented by your question is not one in which the Legislature has exercised executive power. As noted above, the statutes in question merely define terms of office, providing that the terms will continue beyond a statutory entity's continuance or "re-creation" under Oklahoma Sunset Law. The Legislature does not seek, in the statute, to appoint individuals to executive office. On the contrary, the statutes merely define the terms of those already appointed by the executive branch. As noted above, the Oklahoma Supreme Court inIn re County Com'rs, 98 P. 557, 561-562 (Okla. 1908), specifically held that the fixing of a term of office is a legislative function.
¶ 17 As fixing a term of office is a legislative function, and as the statutes in question merely define terms of office, the statutes neither violate the separation of powers doctrine, nor the Governor's appointment powers.
¶ 18 It is, therefore, the official opinion of the AttorneyGeneral that the provisions of 8 O.S. 203 (1988); 59 O.S.1203 (1988), and 59 O.S. 1455 (1988), which provide that variousterms of executive officers survive a statutory entity'scontinuation or "re-creation" under Oklahoma's Sunset Law (74O.S. 3901 (1981) et seq., as amended), do notunconstitutionally interfere with the Governor's appointmentpowers under Article VI, Section 13 of the Oklahoma Constitution,nor violate the Separation of Powers provisions of Article IV,Section 1 of the Oklahoma Constitution.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER ASSISTANT ATTORNEY GENERAL CHIEF, CIVIL DIVISION