JUSTICE REGNIER
concurring.
¶136 I feel compelled to write separately in response to Justice Nelson’s thorough and detailed dissent. In fact, I agree with many of his points, but in the end reach the conclusion that our attorney disciplinary process in Montana is not constitutionally infirm, which of course, is the ultimate question we must answer in this proceeding.
*535 ¶137 First, I think it is important to state what this case is not about. It is not whether our system in Montana could be improved. The ABA report is a thorough evaluation with many excellent recommendations.
¶ 138 The precise question presented is whether our attorney disciplinary process, taken as a whole, violates the due process provisions of the constitutions of Montana and the United States. Goldstein and Albers contend, as Justice Nelson energetically states, that the procedure in Montana is systemically unfair. They argue that the combination of the investigatory and adjudicatory functions vested in the same individuals who serve on the Commission renders the entire process, even if only in appearance, unfair to the lawyers who are subjected to the process.
¶139 Justice Nelson’s analysis begins with his conclusion that the United States Supreme Court’s decision in Withrow v. Larkin (1975), 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712, is not sound authority for determining whether the combination of the investigatory and adjudicatory functions in attorney disciplinary proceedings results in a denial of due process. He refers to the United States Supreme Court’s prior decision in In re Ruffalo (1968), 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117, for the proposition that attorney disciplinary proceedings are quasi-criminal in nature and not administrative as characterized in Withrow and therefore, a different analysis should apply.
¶140 Ruffalo, however, had nothing to do with the question of whether the combination of the investigatory and adjudicatory function in an attorney disciplinary action violated due process. Rather, Ruffalo addressed the question of whether there was a violation of due process in a disbarment proceeding where the charges were amended during the proceeding and after the attorney and a key witness had testified at length. The Court noted that an attorney is entitled to know the charges against him before disbarment proceedings commence and he testifies at length. Allowing amendments to the charges after such testimony which cannot be expunged amounts to a trap and a denial of due process. Although the Court noted that the proceedings were quasi-criminal in nature, Ruffalo does not suggest that Withrow would have no application to attorney disciplinary proceedings. Furthermore, the statutory framework examined in Withrow actually allowed the Examining Board “to institute criminal action or action to revoke license ....” It seems to me that the proceedings in Withrow which could ultimately result in the loss of a medical *536 license, are not materially different than proceedings which result in the loss of the right to practice law.
¶ 141 The other authority cited by Justice Nelson for his criticism of Withrow is Tweedy v. Oklahoma Bar Association (Okla. 1981), 624 P.2d 1049. The facts in Tweedy also presented a different question than the one that concerns us. There, a complainant brought proceedings against three attorneys. After two separate investigations, the Professional Responsibility Commission concluded that the charges were unripe for further proceedings. At that juncture, the complainant directly requested the Oklahoma Supreme Court to issue an order compelling the Professional Responsibility Commission to conduct a reinvestigation of the grievance. The Oklahoma Supreme Court concluded that the decision to investigate a complaint was an executive function, which it could not exercise consistent with due process standards and its adjudicatory responsibilities regarding attorney disciplinary proceedings.
¶142 I am confident that this Court would react in a similar fashion if requested to order our Commission on Practice to reinvestigate a complaint against a lawyer, knowing that we would ultimately sit in judgment regarding the lawyer’s conduct. Tweedy correctly distinguished Withrow, recognizing that administrative agencies are checked by both the legislature and the judiciary. In the Montana scheme, however, the Montana Supreme Court serves as a check on the proceedings conducted by the Commission on Practice much the same way that a district court provides a review of an administrative agency’s action, but with a more liberal de novo review. Tweedy was concerned with the Oklahoma Supreme Court actually meddling with its Commission’s investigatory role thus eliminating the benefit of a detached review.
¶143 It is for these reasons, I surmise, that many of the states cited by Justice Nelson still recognize Withrow, subsequent to the Buffalo and Tweedy decisions, as sound authority for the principle that the combination of adjudicatory and investigative functions does not result in a per se denial of due process. In the final analysis, however, simply because the Montana attorney disciplinary procedures are not per se unconstitutional “does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high.” Withrow, 421 U.S. at 58, 95 S. Ct. at 1470, 43 L. Ed. 2d at 730. Viewing the entire *537 process in the cases before us, I conclude that the “risk of unfairness is not intolerably high.”
¶144 Regarding Rule 13,1 believe it is being misinterpreted by the Commission. A plain reading suggests to me that the confidentiality provision in the rule is meant to protect and not hinder attorneys who appear before the Commission. Rule 13 was intended to protect the attorney accused of an ethical violation; to ensure that information received prior to the filing of a formal complaint regarding an attorney would not become public. It was not intended to deny an attorney accused of an ethical violation access to the information gathered regarding his or her alleged misconduct.
¶145 I believe at the point the formal complaint is filed the attorney is entitled to all information contained in the Commission’s files regarding his or her proceeding. I would not, however, send this matter back for further proceedings. A fair review of the nature of the charges against both respondents, the filings made by their counsel, the opportunity to be heard, and the review of this Court of both files, does not justify the unraveling of these entire proceedings.
¶146 Regarding Justice Nelson’s Article II, Section 9, right to know argument, I have adequately expressed my views on the matter in my special concurrence contained in this Court’s Order appointing a fifth member to the Montana Districting and Apportionment Commission dated August 3,1999.
¶147 As with Justice Nelson, I am also impressed by the credentials of the advocates who have appeared before us in this proceeding, many of whom I have admired for years. I also continue to be amazed at the untiring efforts and contributions made by the members of the Commission on Practice. I think everyone involved, including every member of this Court, recognizes that our profession must be no less vigilant at protecting the constitutional rights of our colleagues as other citizens of this state. Although our attorney disciplinary system may beg for change, I cannot say that it does not meet minimal due process standards as defined by the United States Supreme Court and this Court. I believe that both respondents have been provided a fair hearing.
JUSTICE GRAY joins in the foregoing concurring opinion of JUSTICE REGNIER.